# Exhibit A



**COUNTY OF ESSEX**
**OFFICE OF HUMAN RESOURCE**
**HALL OF RECORDS-ROOM 340**
**NEWARK, NJ 07102**

### Request for Religious Accommodation
### (To be completed by employee or applicant)
**APPLICANT INFORMATION (THIS SECTION IS TO BE COMPLETED BY APPLICANTS ONLY)**

| APPLICANT NAME: | | DEPARTMENT IN WHICH YOU ARE SEEKING EMPLOYMENT | |
|---|---|---|---|
| HOME ADDRESS: | | TELEPHONE(HOME): | |
| | | TELEPHONE(CELL): | |
| | | EMAIL ADDRESS: | |

**EMPLOYEE INFORMATION (THIS SECTION TO BE COMPLETED BY EMPLOYEES ONLY)**

| EMPLOYEE NAME: | Alexander Leone | EMPLOYEE ID NUMBER: | |
|---|---|---|---|
| POSITION TITLE: | SDAG/AP | If member of Union, indicate which Union: | |
| DEPARTMENT: | IP/Fin.Crimes | WORK LOCATION: | Prospect Ave., West Orange |
| WORK HOURS/DAYS: | 8:30-4:30, M-F | DAYS OFF: | |
| HOME ADDRESS: | | TELEPHONE(WORK): | |
| | | TELEPHONE(HOME): | |
| | | TELEPHONE(CELL): | |

**ACCOMMODATION INFORMATION (THIS SECTION TO BE COMPLETED BY APPLICANT AND EMPLOYEES)**

| ACCOMMODATIONS DESCRIPTION AND REASON THEREFORE (INCLUDE THE DATE THE REQUEST ACCOMMODATION IS TO BEGIN): Work and pray throughout the day at home, to be Ophysibly present at office or court when Reasonably necessary or when accomodating this Religious need would cause undue hardship. | (ATTACH ADDITIONAL SHEETS IF NECESSARY.) Reason: I have a spiritual need to pray in peace and solitude, such as in my backyard, several times throughout the day. |
|---|---|
| ACCOMMODATION REQUESTED IS (CIRCLE ONE): | (PERMANENT)   TEMPORARY |
| IF ACCOMMODATION IS TEMPORARY, PLEASE PROVIDE START DATE AND END DATE. | |

** ATTACH ANY DOCUMENTS WHICH SUPPORT YOUR ACCOMMODATION REQUEST.

| IF THE ACCOMMODATION WAS REQUESTED PREVIOUSLY, YOU MUST COMPLETE THE FOLLOWING SECTION: | |
|---|---|
| DATE OF PREVIOUS REQUEST: | |
| NAME/TITLE OF PERSON WHO RECEIVED REQUEST: | |

## Response to Religious Accommodations
### (To be completed by the department director or his/her designated management representative)

## Complete this section ONLY if the accommodation is granted.

| | PERMANENT          TEMPORARY |
|---|---|
| IS THIS ACCOMMODATION PERMANENT OR TEMPORARY (CIRCLE ONE) | |
| IF ACCOMMODATION IS TEMPORARY, PLEASE PROVIDE START DATE AND END DATE. | |
| PROVIDE A SYNOPSIS OF THE ACCOMMODATION, INCLUDING EFFECTIVE DATE, DURATION, AND CHANGES TO THE REQUESTED ACCOMMODATION, IF ANY. | |

## Complete this section ONLY if the accommodation is denied

| | |
|---|---|
| PROVIDE THE REASON(S) FOR DENIAL INCLUDING WHY GRANTING THE REQUEST MAY CAUSE UNDUE HARDSHIP TO THE DEPARTMENT/COUNTY. | (ATTACH ADDITIONAL SHEET IF NECESSARY.) |

RESPONDING OFFICIAL'S SIGNATURE/DATE: _____

Once a decision has been made to grant or deny a request for religious accommodation, the responding official should provide the employee or applicant with a copy of this Response to Religious Accommodation Request form. A decision should be made no later than ten (10) business days after the submission of the Request for Religious Accommodation form by the employee or applicant.

| | |
|---|---|
| OUTCOME(CICRLE ONE): | GRANTED               DENIED |
| DATE GRANTED OR DENIED: | |
| STATUS OF ACCOMMODATION (CIRCLE ONE): | PERMANENT               TEMPORARY |

APPLICANT/EMPLOYEE SIGNATURE/DATE:  *Alex Leone 04/26/21*

RESPONDING OFFICIAL'S SIGNATURE:  _____

REQUEST RECEIVED ON:  _____

# Exhibit B

Work and pray throughout the day at home, to be physically present at office or court when reasonably necessary or when accommodating this religious need would cause undue hardship. Reason:  I have a spiritual need to pray in peace and solitude, such as in my backyard, several times throughout the day.

# Exhibit C

## Alexander Leone

| | |
|---|---|
| **From:** | Alexander Leone |
| **Sent:** | Thursday, May 6, 2021 2:35 PM |
| **To:** | Walter Dirkin |
| **Subject:** | "Supplement" Requested by Ms. Gaccione |

Dear Walter,

I believe Ms. Gaccione, summarizing what I said on the form and during the meeting, stated the request very well but:

- I am requesting an accommodation of modifying the schedule.
- Currently, the schedule permits me, during every other week, to work from home primarily and be physically present at the office or court when reasonably necessary (several examples were discussed).
- I am requesting that this status quo continue and be extended from every other week to each week.

The reasons for this request were also covered extensively, but to reiterate:

- I have a spiritual need to pray in peace and solitude, such as in my backyard, several times throughout the day.
- Being physically present in the office interferes with this necessary religious practice:  For instance, it makes me feel uncomfortable and unable to concentrate, prevents spontaneous spoken prayer, is antithetical to that peace and solitude, and permits other people to see or hear me.
- For the above reasons, potential alternatives that were considered—such as commuting to a public park or driving back and forth between my home multiple times throughout the day—are unworkable.

Please let me know if you need any additional information.

Thank you,

Alex

---

**From:** Alexander Leone
**Sent:** Friday, April 30, 2021 1:33 PM
**To:** Walter Dirkin <Walter.Dirkin@njecpo.org>
**Subject:** Re: Request for Religious Accommodation

Dear Walter,

Attached and below, please find the text from the form (under "accommodations description and reason therefore").

Thank you,

Alex

***

> Work and pray throughout the day at home, to be physically present at office or court when reasonably necessary or when accommodating this religious need would cause undue hardship.  Reason:  I have a spiritual need to pray in peace and solitude, such as in my backyard, several times throughout the day.

**From:** Alexander Leone
**Sent:** Monday, April 26, 2021 11:00 AM
**To:** Walter Dirkin <Walter.Dirkin@njecpo.org>
**Cc:** Pamela Kearney <Pamela.Kearney@njecpo.org>
**Subject:** Request for Religious Accommodation

Dear Walter,

Attached, please find the request for religious accommodation form.  Please let me know if any additional information is required.

Thank you,

Alex

# Exhibit D

# OFFICE OF THE ESSEX COUNTY PROSECUTOR

## THEODORE N. STEPHENS, II
### ACTING ESSEX COUNTY PROSECUTOR

ESSEX COUNTY VETERANS COURTHOUSE, NEWARK, NEW JERSEY 07102
Tel: (973) 621-4700        Fax: (973) 621-5697

**ROMESH C. SUKHDEO**
**ACTING FIRST ASSISTANT PROSECUTOR**



**MITCHELL G. McGUIRE III**
**ACTING CHIEF OF DETECTIVES**

## MEMORANDUM

TO:     Alexander Leone, Assistant Prosecutor

FROM: Roger J. Imhof, Chief Assistant Prosecutor

DATE:  May 12, 2021

RE:     Religious Accommodation Request

Please accept the within Memorandum in response to your Request for Religious Accommodation submitted on April 26, 2021. As you know, representatives from the Essex County Prosecutor's Office (ECPO) and Essex County Counsel, Courtney Gaccione met with you on May 6, 2021 (via Teams remote video conferencing) to discuss your request and obtain further information from you regarding the specific nature of the accommodation you are seeking. On that same date, at the request of Ms. Gaccione, you submitted an email to your direct supervisor Deputy Chief Assistant Prosecutor, Walter Dirkin, summarizing your accommodation request.

**Summary of the Religious Accommodation Request**

You have advised the ECPO that you are seeking a schedule modification to work from home on a full-time basis to pray at home. You are requesting that the accommodation begin immediately and be permanent.  You have identified as holding a belief in Christianity without more specific information provided about any particular provision of Christianity connected to your accommodation request.

Currently, due to the COVID-19 pandemic, the ECPO is working an A/B schedule which permits Assistant Prosecutors to work one week at home and the following week in the office. This schedule was implemented in March 2020 to minimize the number of staff in the office at one time. You acknowledged that there are instances when Assistant Prosecutors are required to be in the office during their "at home" week based on the needs of the office. You have advised that you do not presently require any accommodation while working at home pursuant to the A/B schedule format. However, you would like to be able to work from home every day except for when it is "reasonably necessary" to be physically in the office. You have indicated that you

are requesting that this accommodation continue past the discontinuation of the A/B schedule so that you could remain working from home on a full-time basis. You have advised that you will continue to be in the office when "reasonably necessary" such as court appearances or in-person meetings.

The basis for your request is your spiritual need to pray in peace and solitude in a location, such as in your backyard, several times throughout the day. You have indicated that being physically present in the office interferes with this necessary religious practice as it makes you feel uncomfortable and unable to concentrate or focus on prayer, prevents spontaneous spoken prayer and is contrary to the peace and solitude that you seek. You also indicated that prayer in the office would subject you to being overheard by others. You advised, when asked, that prayer in the County park across the street from your worksite was not an acceptable alternative because it would curtail the spontaneous nature of your prayer and it would also subject you to being seen and heard by others. You likewise indicated that traveling home from your worksite during the day to pray would not be acceptable because it would not allow you to pray spontaneously throughout the day. While not ideal, you advised that prayer in the office on a limited basis if you are in the office when "reasonably necessary" would be acceptable because it would be infrequent. You advised that you would pray in your office with the door closed. On an on-going basis, however, you stated that being in the office every day (or every other week during the pendency of the A/B schedule) would not be conducive to the peace and solitude you seek during prayer as well as subjecting you to interruption and being overheard. Finally, you advised that at this current time you no longer require any specific religious accommodation while physically present in a courtroom and you confirmed that there are no issues outstanding in connection with your prior accommodation requests dated January 10, 2020 and March 2, 2020.

**ECPO Response**

Currently, the ECPO is on an alternating week A/B schedule.  You will be permitted to remain on the current A/B schedule with one week in the office and one week at home on an alternating basis. Your presence in the office on your "at home" week may still be required based on the needs of the office. Moreover, the ECPO anticipates that it will discontinue the A/B schedule in the coming months. At that time, you will be required to be in the office on a full-time basis. Accordingly, your request to work from home on a full-time basis presently or in the future is denied.

It is the nature of the work performed by the ECPO that individuals be physically present in the office. As discussed during our meeting, in person courtroom appearances will resume at some point in the future.  Many ECPO meetings are not pre-scheduled and occur on an ad hoc basis that requires the presence of attorneys in the office. In person witness interviews are preferred over those conducted remotely.  Additionally, emergent matters that arise may require immediate response that would necessitate your presence in the office. You acknowledged the

collaborative nature of ECPO's work which often requires in person discussion.  Finally, as discussed during our meeting, the workload of the ECPO was significantly decreased during the pandemic.  It is anticipated that workload will begin to increase now that the pandemic has begun to subside.  For these reasons, the ECPO takes the position that to allow your religious accommodation request to work from home on a full-time basis would cause an undue hardship on the office.  Specifically, your requested accommodation would cause an unreasonable interference with the efficient operation of the workplace pursuant to N.J.S.A. 10:5-12 (q)(1).

To accommodate your request regarding prayer while in the workplace, the ECPO can offer you the following accommodations:

1) You may continue to engage in pray in your private office during the work day;
2) You may access the Essex County Eagle Rock Reservation that is directly across the street from your worksite. The Eagle Rock Reservation is a four hundred (400) acre property with multiple secluded areas. This option is offered as you specifically referenced your preference to pray outside. You are granted permission to exercise your right to prayer at this location as your needs require so long as it does not adversely impact your work responsibilities;
3) The ECPO has identified a soundproof interview room located on the third floor of the building where you are currently assigned. The interview room does not have occupants on either side and would be completely private. The soundproofing will address your concern about others being able to hear you during prayer. ECPO is prepared to offer you this room on either a permanent basis (if you wish to relocate your office) or you may remain in your current office and use this office on an as needed basis. You will have exclusive use of this office with the ability to lock the door when in use to avoid any distractions or interruptions.

You are welcome to utilize one or all the above accommodations effective immediately.  You may advise Deputy Chief Assistant Prosecutor Dirkin of your decision to utilize any or all these accommodations. Finally, please note that your schedule will revert to the normal A/B schedule effective Monday, May 17th. Thank you for your attention to this matter.

cc:    Theodore N. Stephens, II, Essex County Prosecutor
       Romesh Sukhdeo, Acting First Assistant Prosecutor
       Walter Dirkin, Deputy Chief Assistant Prosecutor
       Gwen Williams, Executive Assistant Prosecutor
       Amy DePaul, Trial Court Administrator
       Robert Jackson, County Administrator/Director of Human Resources
       Jaqueline Jones, Deputy Director, Human Resources
       Courtney Gaccione, Essex County Counsel

# Exhibit E

## **Memorandum**

**To:**  Mr. Roger Imhof, Chief Assistant Prosecutor
**From:** Alex Leone
**Date:** June 1, 2021
**Re:** Religious Accommodation Request

Dear Chief Assistant Prosecutor Imhof,

Please accept this memorandum and renewed request for a religious accommodation in response to your May 12, 2021 memorandum (the "Memorandum").

\*      \*      \*

The Memorandum cites the New Jersey Law Against Discrimination ("the NJLAD").  The NJLAD prohibits "impos[ing] upon a person as a condition of . . . retaining employment . . . any terms or conditions that would require a person to violate or forego a sincerely held religious practice or religious observance . . . *unless*, *after engaging in a bona fide effort*, the employer *demonstrates* that it is unable to reasonably accommodate the employee's religious observance or practice *without undue hardship* on the conduct of the employer's business."  N.J.S.A. 10:5-12(q)(1) (emphases added).[1]  Here, as explained below, ECPO has not engaged in a bona fide effort to accommodate my sincerely held religious practice and observance.  *See* Request for Religious Accommodation (April 26, 2021) ("Request for Accommodation" or "the request"); May 6 Email.  Nor has it demonstrated that accommodating my sincerely held religious practice and observance would impose an undue hardship.

Many, if not all, ECPO employees were permitted to work from home throughout the past year—and continue to be permitted—based on a secular rationale.  Now I, a single employee, am

---

[1]      "Undue hardship" means "an accommodation requiring *unreasonable expense or difficulty*, *unreasonable interference with the safe or efficient operation of the workplace* or a violation of a bona fide seniority system or a violation of any provision of a bona fide collective bargaining agreement."  N.J.S.A. § 10:5-12(q)(3)(a) (emphases added).  The NJLAD, accordingly, "g[ives] people of faith rights that exceed[] those afforded them through . . . Title VII."  *See Victor v. State*, 203 N.J. 383, 407 (2010).

requesting what is essentially the same accommodation based on a religious rationale. The Memorandum attempts to deny this request *categorically* with *no* individualized consideration—even though the past year and present status quo have shown clearly that it can be accommodated efficiently, if not easily.

The statutory factors used to assess undue hardship cut against that attempted denial; and upon scrutiny, the reasons offered for it plainly do not justify it. *See* N.J.S.A. 10:5-12(q)(3)(b). Each of the factors is addressed in turn.

**(i)   "The identifiable cost of the accommodation, including the costs of loss of productivity and of retaining or hiring employees or transferring employees from one facility to another, in relation to the size and operating cost of the employer."**

The Memorandum suggests that granting the Request for Accommodation would bear a "cost" in the form of "loss of productivity." *See* N.J.S.A. 10:5-12(q)(3)(b)(i); Memorandum at 3 (asserting that the "requested accommodation would cause an unreasonable interference with the efficient operation of the workplace"). But the reasons offered in support of this suggestion—either individually or collectively—plainly do not justify a categorical denial of the request.

*First*, the Memorandum observes that "in person courtroom appearances will resume at some point in the future." Memorandum at 2. Speculation about what might happen "at some point in the future" cannot justify a categorical denial of the requested accommodation at the present time. Regardless, in-person courtroom appearances were the first example I provided at the May 6 meeting of a circumstance in which all would agree that physical presence *is* reasonably necessary. *See* Memorandum at 2 (recognizing that under the Request for Accommodation I "will continue to be in the office when reasonably necessary[,] such as court appearances"). They are also mentioned in the Request for Accommodation itself (requesting "to be physically present at office *or court* when reasonably necessary" (emphasis added)).

2

To be clear, and to reiterate, the requested accommodation would *not* interfere with in-person courtroom appearances:  I have been and would continue to be physically present for all of them; *and the Request for Accommodation expressly recognizes my willingness to be physically present, not only under those circumstances, but whenever working remotely* "*would cause undue hardship.*"  The Memorandum completely omits that crucial component of the Request for Accommodation:  again, willingness to be physically present *whenever* "*accommodating [my] religious need would cause undue hardship.*"  In that omission, as throughout, *the Memorandum flatly fails to provide individualized consideration to the request*.

In addition, on April 26, I submitted a request—to both my immediate supervisor, Deputy Chief Assistant Prosecutor Walter Dirkin, and potential future supervisor, Director Frank Ducoat—to transfer to the Appellate Unit, which generally requires fewer in-person court appearances.  This request was specifically mentioned to you, Chief Assistant Prosecutor Imhof, during the May 6 meeting.  Yet the Memorandum does not address it.

**Second**, the Memorandum asserts that "[m]any ECPO meetings are not pre-scheduled and occur on an ad hoc basis that requires the presence of attorneys in the office."  Memorandum at 2. **Yet the Memorandum provides no explanation why permitting me to participate in such meetings telephonically (or through Teams, etc.) in order to accommodate my religious need would impose an undue hardship, an "unreasonable interference with the safe or efficient operation of the workplace."**  Such meetings have, in fact, occurred telephonically (or through Teams, etc.) over the past year—as, in fact, did the May 6 meeting to discuss the request.  Such meetings have not required "unreasonable expense or difficulty" or resulted in "unreasonable interference with the safe or efficient operation of the workplace;" the Memorandum cites no fact

3

to the contrary.  And any rare "ad hoc" in-person meetings have been indistinguishable from telephonic meetings.

On very rare occasions—perhaps three over the course of the year—a supervisor scheduled an in-person meeting for which physical presence was requested but not immediately required.  I believe such meetings occurred both during weeks that I was scheduled to work in the office and weeks I was not.  Such scheduling of and attending an in-person meeting, a process which was already in place before the request, is fully consistent with and contemplated by it.  *See* Request for Accommodation (anticipating "physical[] presen[ce]" at the office).[2]

**Third**, the Memorandum observes that "in person witness interviews are preferred over those conducted remotely."  Memorandum at 2.  But like in-person courtroom appearances, *I cited observation of witness interviews at the May 6 meeting as an example of a circumstance in which physical presence* is *reasonably necessary*.  To be clear, and to reiterate, the requested accommodation would *not* interfere with in-person observation of witness interviews:  I have been and would continue to be present for all of them—for instance, I was scheduled to work from home but physically present to observe witness interviews on March 11, and March 25, 2021.

**Fourth**, the Memorandum asserts that "emergent matters that arise may require immediate response that would necessitate [my] presence in the office."  Memorandum at 2.  A timely response to emergent matters is always appropriate.  Yet to my knowledge there has not been a single instance in which being in the office was "necessitate[d]" in order to respond to an emergent

---

[2]     The Memorandum asserts that I "acknowledged the collaborative nature of ECPO's work which *often requires in person discussion*."  *See* Memorandum at 2-3 (emphasis added).  I acknowledged, like the Request for Accommodation itself suggests, that in-person discussion could potentially be required.  But I would not acknowledge that such discussion is "require[d]" "*often*" because that is false:  The Memorandum does not even attempt to explain why in-person discussion is "required"—either required at all or required so frequently that the Request for Accommodation must be categorically denied—and there has not been a single occasion on which telephonic (or Teams, etc.) meetings did not work efficiently.  Telephonic (or Teams, etc.) meetings work efficiently, for example, even for entire grand jury presentations with exposition of exhibits, etc.

matter.  The Memorandum cites none:  The Memorandum's vague assertions about nondescript "emergent matters"—and the Memorandum generally—are devoid of specific examples or concrete facts.  What such a hypothetical scenario would be like is, therefore, a mystery.  Even assuming such a scenario could occur at some theoretical point in the future, it would not be a reason to deny the Request for Accommodation categorically.   As with other points the Memorandum tries to make, *it provides no explanation why permitting me to assist in such theoretical matters telephonically (or through Teams, etc.)—or, if necessary, to drive to the office immediately*[3]*—in order to accommodate my need to pray would impose an undue hardship*.  And again, *the Memorandum provides no individualized analysis*.

**Finally**, the Memorandum observes that "[i]t is anticipated that [the] workload will begin to increase now that the pandemic has begun to subside."  Memorandum at 3.  Like the observation about potential in-person court appearances "at some point in the future," a vague observation about what is "anticipated" cannot justify a categorical denial of the requested accommodation at the present time.   The Memorandum conspicuously ignores the fact that the Request for Accommodation could be tailored if necessary in the future.  At most, an increased workload may make the circumstances under which it is reasonably necessary to be in the office more frequent.  And again, *such circumstances are contemplated by the Request for Accommodation*.

---

[3]      The drive to the office from my home is approximately twenty minutes.  It is difficult to imagine the strange scenario in which *both* physical presence at the office in West Orange (as opposed to the courthouse, which is in Newark) is required *and* there is not twenty minutes to spare in getting there.  (As observed above, this vague assertion about nondescript "emergent matters"—like the other assertions in the Memorandum—is not supported by any specific example or concrete fact.  The Memorandum provides zero individualized analysis.)

In addition, this speculation about "emergent matters" shows the illogic of *permitting* me to range a nearby "four hundred (400) acre property" "so long as it does not adversely impact [my] work responsibilities," as discussed below, but *denying* me the requested accommodation of working and praying at home *when it would* not *cause undue hardship*.  *See* Memorandum at 3; Request for Accommodation (requesting "to be physically present at office or court . . . *when accommodating [my] religious need would cause undue hardship*" (emphasis added)).

Further, my ability to focus on and complete work *depends on my religious practice and observance and resulting spiritual and mental wellbeing*:  In other words, I suffer and am unable to focus on and complete work efficiently when denied the opportunity to pray spontaneously in peace and solitude; and my work is almost always more efficiently completed from home.[4]

In sum, the Memorandum:

- Presents two observations—about in-person court appearances and witness interviews—that are *uncontested and fully consistent with the Request for Accommodation*, as the past year and present status quo have made clear;

- ***Fails to explain why permitting me to participate in meetings telephonically (or through Teams, etc.) in order to accommodate my need to pray would impose an undue hardship, an "unreasonable interference with the safe or efficient operation of the workplace*;"**

- Makes a vague assertion about nondescript "emergent matters," *provides no specific example or concrete fact in support of its assertions*, **and fails to provide** any *individualized analysis*; and

- Categorically refuses to grant the requested accommodation—*even subject to potential future tailoring*—based on extremely rare hypothetical scenarios and speculation.

Given that it provides *no* specific example, *no* concrete fact, and *no* individualized analysis, the Memorandum fails to show *even a de minimis interest* in denying the accommodation of participating telephonically and presenting physically as reasonably necessary.   And it does not permit accommodation *to any extent*, instead denying categorically—and unlawfully.

---

[4]      For instance, while being permitted to work from home, I have volunteered additional assistance many times; have expressly remarked that I am happy to take more work; and have completed assignments so quickly and thoroughly that it has surprised my supervisor.

(ii)     **"The number of individuals who will need the particular accommodation for a sincerely held religious observance or practice."**

The Memorandum does not identify a single additional person who "will need the particular accommodation for a sincerely held religious observance or practice." *See* N.J.S.A. 10:5-12(q)(3)(b)(ii).  Accordingly, like the first statutory factor, this factor weighs in favor of granting the Request for Accommodation.

(iii)     **"For an employer with multiple facilities, the degree to which the geographic separateness or administrative or fiscal relationship of the facilities will make the accommodation more difficult or expensive."**

This statutory factor apparently has no application here.  *See* N.J.S.A. 10:5-12(q)(3)(b)(iii).

*       *       *

Although the Memorandum purports to offer three alternative "accommodations," it is unclear whether these are offered in ignorance of the facts—either those underlying the Request for Accommodation or those of the "accommodations" themselves. And by not permitting *any* work and prayer from the peace and solitude of my home—even though it has been and is widely permitted based on a secular rationale—the "accommodations" show that ECPO has not engaged in a bona fide effort to accommodate my sincerely held religious practice and observance.

***First***, the Memorandum states that I "may continue to engage in pray in [my] private office during the work day."  Memorandum at 3.  Permitting me to "continue to engage in pray" in my private office is not an offer of an accommodation—it is permitted anyway and is plainly legally required to be permitted.  To style this "offer" as an "accommodation" also suggests a lack of basic knowledge of the facts underlying the Request for Accommodation, which was submitted because being in the office "makes me feel uncomfortable and unable to concentrate, prevents spontaneous spoken prayer, is antithetical to that peace and solitude, and permits other people to see or hear me."  *See* May 6 Email; Request for Accommodation; Memorandum at 2 (recognizing that "being

7

physically present in the office interferes with [my] necessary religious practice as it makes [me] feel uncomfortable and unable to concentrate or focus on prayer, prevents spontaneous spoken prayer and is contrary to the peace and solitude that [the prayer requires]").  And to style its foremost "offer" as an "accommodation"—when what is being "offered" is already part of the status quo—further shows that ECPO has not engaged in a bona fide effort to accommodate my sincerely held religious practice and observance.

   ***Second***, the Memorandum states that I "may access the Essex County Eagle Rock Reservation . . . so long as it does not adversely impact [my] work responsibilities." Memorandum at 3.  But as suggested previously, *see* May 6 Email, requiring me to cross a busy street twice, hike up and down wooded hills and muddy terrain in work attire, and search out potentially "secluded areas"—multiple times every day, regardless of the weather—is hardly an accommodation at all. *And* as both I and the Memorandum recognize, "it would curtail the spontaneous nature of [my] prayer and it would also subject [me] to being seen and heard by others."  *See* Memorandum at 2.

   Furthermore, this offer to range "a four hundred (400) acre property" shows how illogical and unlawful it is to deny the Request for Accommodation:  Under this offer, I would be "granted permission to exercise [my] right to prayer at this [400-acre property] *as [my] needs require so long as it does not adversely impact [my] work responsibilities*," **proving that even extended and ad hoc physical absence from the office would not impose an undue hardship**.  *See* Memorandum at 3 (emphasis added).  Crossing the busy Prospect Avenue twice; hiking up and down wooded hills and muddy terrain in work attire; searching out potentially "secluded areas" on the "four hundred (400) acre property;" praying, if possible; and journeying back to the office— multiple times every day—*will take more time than simply driving to the office when reasonably necessary*.  *And*, as reiterated above, it is unworkable because "it would curtail the spontaneous

nature of [my] prayer and it would also subject [me] to being seen and heard by others." *See* Memorandum at 2.

**Third**, the Memorandum offers me the opportunity to be confined to a repurposed soundproof room fitted with surveillance cameras and no windows. Memorandum at 3. Yet being in such a room would further deny me the peace and solitude necessary to pray found in places such as my backyard. *See* Request for Accommodation (recognizing the "need to pray . . . such as in my backyard"); May 6 Email; Memorandum at 3 (recognizing the "preference to pray outside"). Whereas being confined to a room with no windows fulltime would further deny me the peace and solitude necessary to pray, the need to commute back and forth to such a room would also prevent spontaneous prayer and such commuting "would . . . subject [me] to being seen and heard by others." *See* Memorandum at 2. And like the "journey-to-the-center-of-the-400-acre-property" accommodation, this "accommodation" similarly shows the illogic of denying the request—and instead requiring a different kind of physical absence from the office: in isolation in a soundproof room even with the door "lock[ed]." *See* Memorandum at 3.

\* \* \*

The past year and present status quo have made it abundantly clear that working from home does not impose an undue hardship: It has been and continues to be permitted widely based on a secular rationale. The Memorandum—completely lacking in specific examples, concrete facts, and individualized analysis—shows that ECPO has not engaged in a bona fide effort to accommodate my sincerely held religious practice and observance.[5] The reasons for denying the

---

[5]      The Memorandum asserts that I "have identified as holding a belief in Christianity without more specific information provided about any particular provision of Christianity connected to [my] accommodation request." Memorandum at 1. This assertion is false: I have repeatedly stated that prayer is a necessary component of my practice of Christianity, that Christianity as I practice it requires prayer in peace and solitude such as in my backyard throughout the day. The assertion also seems disingenuous: No one asked about "more specific information . . . about any particular provision of Christianity" at the May 6 meeting.

Request for Accommodation offered in the Memorandum do not stand up to scrutiny and cannot justify treating a religious rationale for telework less favorably than the secular rationale already accepted.  For instance, the Memorandum utterly fails to explain why permitting me to participate in meetings telephonically (or through Teams, etc.) in order to accommodate my need to pray would impose an undue hardship, an "unreasonable interference with the safe or efficient operation of the workplace;" it does not even attempt to explain why physical presence is "required"—either required at all or required so frequently that the Request for Accommodation must be categorically denied.  And it conspicuously ignores that the Request for Accommodation could be tailored in the future if necessary, and omits a crucial component of it: willingness to be physically present *whenever* "*accommodating [my] religious need would cause undue hardship*."  **Accordingly, it clearly falls short of demonstrating undue hardship.**

If ECPO continues to deny the Request for Accommodation in its entirety, it will be in violation of the NJLAD among other statutory and constitutional provisions under which I reserve all rights.  I respectfully request that ECPO grant the Request for Accommodation.[6]

Thank you,
Alex G. Leone

cc:     Theodore N. Stephens, II, Essex County Prosecutor
        Romesh Sukhdeo, Acting First Assistant Prosecutor
        Walter Dirkin, Deputy Chief Assistant Prosecutor
        Gwen Williams, Executive Assistant Prosecutor
        Courtney Gaccione, Essex County Counsel

---

[6]     The Memorandum asserts that at the May 6 meeting I "confirmed there are no issues outstanding in connection with [my] prior accommodation requests dated January 10, 2020 and March 2, 2020."  Memorandum at 2.  To be clear, I stated that I did not think a religious accommodation request was the proper framework for addressing that circumstance and that any outstanding issues need not be addressed at that time.

10

# Exhibit F

# OFFICE OF THE ESSEX COUNTY PROSECUTOR

## THEODORE N. STEPHENS, II
### ACTING ESSEX COUNTY PROSECUTOR
ESSEX COUNTY VETERANS COURTHOUSE, NEWARK, NEW JERSEY 07102

Tel: (973) 621-4700          Fax: (973) 621-5697



**ROMESH C. SUKHDEO**
ACTING FIRST ASSISTANT PROSECUTOR

**MITCHELL G. McGUIRE III**
ACTING CHIEF OF DETECTIVES

## MEMORANDUM

TO:     Alexander Leone, Assistant Prosecutor

FROM: Roger J. Imhof, Chief Assistant Prosecutor

DATE: June 9, 2021

RE:     Religious Accommodation Request

---

I am in receipt of you Memorandum dated June 1, 2021, which sets forth your renewed request for a religious accommodation from the Essex County Prosecutor's Office (ECPO). The ECPO's position, set forth in its Memorandum dated May 12, 2021, remains unchanged. Furthermore, please be advised that your request to be transferred to the Appellate Section was denied by an email from the Director of the Appellate Section, Frank Ducoat (dated May 3, 2021), as there are currently no openings in this section.  Your request has been noted and should future openings become available your request will be considered. Thank you for your attention to this matter.

cc:     Theodore N. Stephens, II, Essex County Prosecutor
        Romesh Sukhdeo, Acting First Assistant Prosecutor
        Walter Dirkin, Deputy Chief Assistant Prosecutor
        Gwen Williams, Executive Assistant Prosecutor
        Amy DePaul, Trial Court Administrator
        Robert Jackson, County Administrator/Director of Human Resources
        Jaqueline Jones, Deputy Director, Human Resources
        Courtney Gaccione, Essex County Counsel

# Exhibit G

## Alexander Leone

| | |
|---|---|
| **From:** | Roger Imhof |
| **Sent:** | Thursday, June 10, 2021 5:38 PM |
| **To:** | Alexander Leone |
| **Cc:** | Theodore Stephens; Romesh Sukhdeo; Gwen Williams; Courtney Gaccione |
| **Subject:** | RE: Religious Accommodation |

A.P. Leone,

I would again direct you to the Memorandum dated May 12, 2021, regarding your request for a religious accommodation from the Essex County Prosecutor's Office (ECPO) for guidance.  ECPO continues to stand by the reasons set forth in the memorandum as the basis of the religious accommodation being offered to you.

Thank you.



Roger J. Imhof
**Chief Assistant Prosecutor**
Essex County Prosecutor's Office
50 West Market Street
Newark, New Jersey 070102
O-973.621.5693

---

**From:** Alexander Leone
**Sent:** Thursday, June 10, 2021 11:06 AM
**To:** Roger Imhof <Roger.Imhof@njecpo.org>
**Cc:** Theodore Stephens <Theodore.Stephens@njecpo.org>; Romesh Sukhdeo <Romesh.Sukhdeo@njecpo.org>; Gwen Williams <Gwen.Williams@njecpo.org>; Roger Imhof <Roger.Imhof@njecpo.org>; Courtney Gaccione <cgaccione@counsel.essexcountynj.org>
**Subject:** Re: Religious Accommodation

Dear CAP Imhof,

This memo says that "ECPO's position . . . remains unchanged" but does not provide any substantive reply.  To be clear:

- Neither you nor anyone else has any substantive reply to any of the points raised in my June 1 memo?  Or any additional reason or explanation for denying the renewed request?
- Are there any people other than those cc'd on this email who have participated in the process of considering and denying the request?

Separately, what is the process for appealing this denial?

Thank you,

Alex

**From:** Roger Imhof <Roger.Imhof@njecpo.org>
**Sent:** Wednesday, June 9, 2021 12:27 PM
**To:** Alexander Leone <Alexander.Leone@njecpo.org>
**Subject:** Religious Accommodation

A.P. Leone,

Attached please find ECPO's response to your memorandum dated June 1, 2021.



Roger J. Imhof
Chief Assistant Prosecutor
Essex County Prosecutor's Office
50 West Market Street
Newark, New Jersey 070102
O-973.621.5693

2