**UNITED STATES DISCTICT COURT**
**DISTRICT OF NEW JERSEY**
_____x

| | | |
|---|---|---|
| **ALEX G. LEONE,** | : | **MEMORANDUM OF** |
| **Plaintiff,** | : | **POINTS AND** |
| **v.** | : | **AUTHORITIES** |
| | : | |
| **ESSEX COUNTY PROSECUTOR'S OFFICE,** | : | Docket No. 2:21-cv-12786 |
| **THEODORE STEPHENS II,** | : | |
| **ROMESH SUKHDEO,** | : | |
| **GWENDOLYN WILLIAMS,** | : | |
| **and** | : | |
| **ROGER IMHOF,** | : | |
| **in their individual and official capacities,** | : | |
| **Defendants.** | : | |

_____x

## TABLE OF CONTENTS

**Introduction**…………………………………………………………… p. 2

**Factual Background** …………………………………………………..……… p. 2

**Legal Standard**…………………………………………………………… p. 5

**Argument**……………………………………………………….…………… p. 5

**Conclusion**………………………………………………….…………… p. 17

1

**INTRODUCTION**

For more than a year, Defendants have judged that secular reasons are adequate to permit employees to work from home, and have permitted many employees to do just that, including on a fulltime basis. Yet at the same time, Defendants have judged *religious* reasons *inadequate* to permit a single employee to work from home *at all*, and have categorically prohibited Plaintiff from so doing. The effect of this discriminatory policy choice—as explained to Defendants prior and subsequent to the filing of this action—is to prevent Plaintiff from praying as his religion requires throughout each work day. This infringement of free exercise is devastating to Plaintiff.

Defendants currently require Plaintiff to be physically present in the office during each day of every other week. Although this requirement is arbitrary and discriminatory—again, Defendants have permitted many employees to work from home fulltime for secular reasons—it is preferable to what Defendants have now stated they will do on August 2: require Plaintiff to forego his prayer practice *every* day of *every* week, instead of every other week. Changing the status quo and increasing infringement of Plaintiff's free exercise *by 100%* is not only unnecessary and inhumane; it is unlawful.

As explained below, this change to the status quo threatens immediate irreparable injury to Plaintiff, in addition to the irreparable injury already inflicted routinely. The balance of equities is not even close: It tips decisively in Plaintiff's favor. And the vague and conclusory reasons asserted to support this discrimination show that it cannot be in the public interest. Accordingly, Plaintiff respectfully requests a preliminary injunction.

**FACTUAL BACKGROUND**

Plaintiff incorporates the Complaint ("Compl.") and its attachments by reference and briefly recounts the following facts. During the past year, Defendants have permitted employees to work from home for secular reasons (e.g., to prevent viral transmission).

(Compl. ¶15).  For instance, employees in the "Adult Trial" section of Plaintiff's office were permitted to work from home fulltime during November 2020 into June 2021; and employees in the "Appellate" section of Plaintiff's office have been permitted to work from home fulltime from March 2020 to this day.  (Compl. ¶ 17; Motion for Preliminary Injunction ("MPI") Ex. A ¶¶ 10 & 11).[1]

On April 26, 2021, Plaintiff requested that he be permitted to work from home for religious reasons.  (*See, e.g.*, Compl. Exs. A & B ("the Request")).  In sum, Plaintiff's religion requires him to pray, including aloud and spontaneously, throughout each day; and Plaintiff's religious belief is that the peace and solitude required for this practice are impossible in the office.  (*See, e.g.*, Compl. ¶¶ 19-27; Compl. Ex. C; MPI Ex. A ¶ 13).  Notably, in requesting a religious accommodation, Plaintiff did *not* request to be absolved of *any* work responsibility; Plaintiff's prayer practice has never interfered in his work.  (Compl. ¶ 23; MPI Ex. A ¶ 17).  Plaintiff *did* expressly request an accommodation *only* to the extent it would *not* impose a hardship on Defendants.  (*See, e.g.*, Compl. Exs. A & B).  Plaintiff is, and has always been, fully willing to be physically present for anything required by his job responsibilities—including, for instance, in-person court appearances, witness interviews, or any other obligation.  (*See, e.g.*, Compl. ¶ 62; MPI Ex. A ¶ 9).  Defendants, nonetheless, categorically denied Plaintiff's request for a religious accommodation, thus prohibiting his free exercise of religion on all work days.  (Compl. Ex. D; MPI Ex. A ¶ 13).  Astonishingly, Defendants' categorical prohibition applies regardless of the circumstances and even "in the future."  (Compl. Ex. D at 3).

Defendants' sole rationale for this extreme prohibition consisted of a single paragraph of assertions.  (*See id.* at 2-3).  Defendants refused to explain these assertions.

---

[1]     This Memorandum cites exhibits both to the Complaint and to this Motion.  In citing exhibits to the Complaint, this Memorandum will cite "Compl. Ex. __." In citing exhibits to this Motion, this Memorandum will cite "MPI Ex. __."

(*See* Compl. Exs. E, F & G).  And, factually as well as a matter of common sense, it is clear that the assertions cannot justify Defendants' categorical religious discrimination against Plaintiff.  (*See* Compl. Ex. E at 2-6; MPI Ex. A ¶¶ 3-8 & 17).  If this was clear on May 12, 2021, when Defendants denied the Request, it is even clearer today, given that over the past several months none of the purported reasons Defendants gave for categorically prohibiting Plaintiff's prayer practice has ever applied.  (*See* MPI Ex. A ¶¶ 3-6).  In addition, Defendants offered Plaintiff alternative "accommodations" that either make no sense—for instance, Defendants' foremost offer of an "accommodation" is literally no accommodation (Compl. Ex. D at 3)—or directly contradict Defendants' putative rationale for denying the Request to begin with—for instance, Defendants would generally *permit* Plaintiff to be physically out of the office to range "a four hundred (400) acre [public park] . . . so long as it does not adversely impact [his] work responsibilities" (Compl. Ex. D at 3), but *never* permit Plaintiff work at his nearby home, where he can actually pray and work consistent with his job responsibilities, on the very same condition (*see, e.g.*, Compl. ¶ 58; MPI Ex. A ¶¶ 13-17).

On June 22, 2021, in a letter to Defendants' counsel, Plaintiff reiterated that "[e]very day [he is] required to go to the office for no apparent reason, [he] suffer[s] foregoing [his] prayer practice," and respectfully requested that *at least during days Plaintiff's supervisor would not be in the office and on vacation*—amounting to weeks across June through August—Plaintiff be permitted to work from home as he does normally and efficiently every other week.  (MPI Ex. B).  Counsel for Defendants never responded to this letter or even acknowledged its receipt.[2]

---

[2]     Subsequently, on July 23, Plaintiff forwarded the letter to Defendants' newer counsel (*see* E.C.F. No. 6), who did acknowledge its receipt.

On July 26, 2021, Defendant Sukhdeo announced that "starting Monday, August 2, 2021," there would "no longer be" a schedule that permits Plaintiff to work from home at least half the time. (*See* MPI Ex. C). Unless the Court grants preliminary relief, **this change in the status quo will cause a 100% increase in Defendants' infringement of Plaintiff's free exercise,** doubling the number of days on which Defendants prohibit Plaintiff's prayer practice.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Establishing likelihood of success on the merits does not require a showing that the plaintiff's chance of success is "more likely than not," but only "a showing significantly better than negligible:" that the plaintiff "*can* win on the merits." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (emphasis added). The balance-of-equities and public-interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

### I.     Plaintiff has a strong likelihood of success on the merits.

Plaintiff establishes not only that he can win on the merits, but that his likelihood of success is strong. As explained below, Defendants' totally untailored religious discrimination against Plaintiff is subject to strict scrutiny, which it flatly fails. Moreover, Defendants "ha[ve] not offered any interest in defense of [their discriminatory] policy that is able to withstand *any form* of heightened scrutiny." *See Fraternal Ord. of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999) (Alito, J.);

(Compl. Ex. D at 2-3; Compl. Ex. E at 2-6).[3]  Defendants, therefore, fail to carry *their* burden on this motion.  *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006); *Reilly*, 858 F.3d at 180; *see also Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 666 (2004) (affirming that a plaintiff moving for a preliminary injunction "must be deemed likely to prevail" unless the government justifies its infringement of First Amendment liberty under the appropriate level of scrutiny).

The First Amendment to the United States Constitution provides:  "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  (The Free Exercise Clause governs not only Congress, but States and their political subdivisions, agencies, and officials as well.  *See, e.g., Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).)  "Free exercise" includes "not only belief and profession but the performance of (or abstention from) physical acts." *Employment Div. v. Smith*, 494 U.S. 872, 877 (1990).  And the Free Exercise Clause protects even religious practices that some may find unusual or idiosyncratic, such as the ritual killing and eating of guinea pigs and turtles.  *See, e.g.*, *Lukumi*, 508 U.S. at 525; *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981); *see also Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 900 (7th Cir. 2005) (noting the "vulnerability" of informal or uncommon Christian

---

[3]     If Defendants were to offer new reasons for their discrimination now—after requiring Plaintiff to file a lawsuit and seek emergency relief—it would mean the reasons originally offered were pretextual:  at the very least, that they were not the reasons that "actually motivate[d]" Defendants' decision to deny Plaintiff a religious accommodation. *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994); (*see also infra*, note 4). What's more:  Defendants chose to "stand by" the reasons originally offered as *the sole rationale for their religious discrimination*, and refused to offer any additional reason when Plaintiff asked Defendants *before filing this lawsuit*:  "Neither you nor anyone else has any . . . additional reason or explanation [for categorically denying Plaintiff's request for a religious accommodation]?" (Compl. Ex. G).

Inexplicably, Defendants also refused to respond when asked if there is a "process for appealing th[e] denial" of Plaintiff's request for a religious accommodation.  (*Id.*).

practices to "subtle forms of discrimination"). "[T]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." *Thomas*, 450 U.S. at 715-16. "Courts should not undertake to dissect religious beliefs," *id.* at 715, and "[e]valuating the extent of a burden on religious practice is equally impermissible," *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 170 (3d Cir. 2002). Nor is it permissible to enquire whether religious practices are "mandatory" or "optional." *Id.*

Requiring an employee to forego a sincerely-held religious practice as a condition of retaining employment infringes his right to free exercise within the meaning of the First Amendment. *See, e.g.*, *Thomas*, 450 U.S. at 717; *Sherbert v. Verner*, 374 U.S. 398, 404 (1963); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988) ("[T]his Court has repeatedly held that indirect coercion or penalties on the free exercise of religion, not just outright prohibitions, are subject to scrutiny under the First Amendment."). For instance, it is unlawful to force an employee "to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand." *See, e.g.*, *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 140 (1987) (quoting *Sherbert*, 374 U.S. at 404); *Thomas*, 450 U.S. at 717.

Incidental infringement of free exercise could be legally permissible under *Smith*, but *Smith*'s rule, by its own terms, applies when an infringement of free exercise is the result of a "valid and neutral law of general applicability." *See* 494 U.S. at 879; *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. ___, ___ (slip op.) at 5 (June 17, 2021). A government policy can fail to be "generally applicable" in numerous ways, such as:

- If it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," *Fulton*, (slip op.) at 6;

7

- If a state actor "permit[s] secular exemptions [to the policy] but not religious ones," *Fulton*, (slip op.) at 5-6, including "individualized exemptions," *see, e.g.*, *Ward v. Polite*, 667 F.3d 727, 739, 740 (6th Cir. 2012), *or* "categorical exemptions," *see, e.g.*, *Fraternal Order*, 170 F.3d at 365; or

- "[W]henever [the policy] treat[s] *any* comparable secular activity more favorably than religious exercise," *Tandon v Newsom*, 141 S. Ct. 1294, 1296 (2021) (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67-68 (2020) (per curiam)).

And when the requirement of general applicability is not met, *strict scrutiny applies*. *Fulton*, (slip op.) at 13; *Tandon*, 141 S. Ct. at 1296. Here, Defendants fail to comply with the mandates of neutrality and general applicability three times over:

- Defendants have "prohibit[ed] religious conduct," i.e., working at home for religious reasons in a manner completely consistent with job responsibilities, "while permitting secular conduct," i.e., working from home for secular reasons, which "undermines the government's asserted interests in a similar way"—in fact, the same exact way, *see Fulton*, (slip op.) at 6.

- Defendants "permit secular exemptions," e.g., medical-based exemptions, "but not religious ones," *Fulton*, (slip op.) at 5-6; (Compl. ¶¶ 15-18; MPI Ex. A ¶¶ 3 & 10-12); Defendants use "a system of individualized exemptions" that permits some employees to work from home (e.g., employees in the "Adult Trial" or "Appellate" sections) at some times (e.g., fulltime from March 2020 even to today) but not others, and for some reasons (e.g., secular reasons related to the pandemic, or employees' other reasons) but not others, *see, e.g.*, *Ward*, 667 F.3d 739-40; *and* Defendants categorically discriminate against religious exemptions, *see, e.g.*, *Fraternal Order*, 170 F.3d at 365; (Compl. Ex.

D at 2-3).  In other words, "we are confronted with a scheme that features both individualized and categorical secular exemptions." *See Blackhawk v. Commonwealth*, 381 F.3d 202, 212 (3d Cir. 2004) (Alito, J.).

- Defendants also treat the activity of working from home for secular reasons more favorably *than the same exact activity undertaken for religious reasons*, which they have unlawfully chosen to prohibit categorically, *see Tandon*, 141 S. Ct. at 1296; (Compl. ¶¶ 35 & 53-54; Compl. Ex. D at 2-3).

So strict scrutiny applies three times over, and it is fatal to Defendants' religious discrimination against Plaintiff:  To survive strict scrutiny, *the government must demonstrate* that its infringement of free exercise furthers "interests of the highest order" *and* is "narrowly tailored in pursuit of those interests."  *Lukumi*, 508 U.S. at 546. Defendants cannot demonstrate either requirement; they do not even come close to meeting their burden under any form of heightened scrutiny, let alone strict scrutiny:[4]

- Defendants assert only weak and vague interests in support of their religious discrimination, not backed by any concrete fact or specific example, *see, e.g.*, *Fulton*, (slip op.) at 13-14 ("The City states these objectives at a high level of generality, but *the First Amendment demands a more precise analysis*." (emphasis added)); and Defendants provided *no* individualized analysis in their discrimination against Plaintiff, *see, e.g.*, *id.* at 14 ("The question . . . is not whether the City has a compelling interest in enforcing its . . . policies generally,

---

[4]    Plaintiff's position is that Defendants have not shown even a de minimis interest in support of their discrimination.  (*See, e.g.*, Compl. Ex. E at 2-10; *see generally* Compl.). In addition, because Defendants' discrimination is motivated by unlawful intent, is totally untailored, and is shot through with inconsistencies, it would not pass even the most minimal level of scrutiny, let alone a heightened level of scrutiny, let alone strict scrutiny. *See, e.g.*, *Romer v. Evans*, 517 U.S. 620, 632-33 (1996); (*infra*, notes 5 & 8).

but whether it has such an interest in denying an exception to [*Plaintiff in particular*]"); (Compl. Ex. D at 2-3; Compl. Ex. E at 2-6); *and*

- Defendants have *categorically* prohibited Plaintiff's free exercise of his prayer practice *under all circumstances and even in the future*—the exact opposite of narrow tailoring (*see, e.g.*, Compl. ¶ 53 (Defendants have refused to permit even "one day, hour, or minute" of work from home as necessary to accommodate prayer); Compl. Ex. D at 2-3); *Fulton*, (slip op.) at 13-14.

Defendants refused to provide any additional reasons or explanation for this religious discrimination.  (Compl. Exs. F & G; *supra*, note 2).  Yet *by extending the very same accommodation requested by Plaintiff to many other employees for months or even more than a year* (*see* Compl. ¶¶ 17 & 48; MPI Ex. A ¶¶ 10-12), Defendant Essex County Prosecutor's Office "itself has demonstrated that it has at its disposal an approach" that would accommodate Plaintiff's sincerely-held religious practice without even a minimal burden.  *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 730 (2014).  Defendants even considered and denied the Request—during April 26, 2021, to May 21, 2021—during the very time they were already granting the same accommodation to other employees for secular reasons, *proving they have at their disposal just such an approach*. *See id.* 573 U.S. at 730; (Compl. Exs. A & D; MPI Ex. A ¶¶ 3, 6-8 & 10-12).

Defendants, therefore, flatly fail strict scrutiny.  And as made clear in Plaintiff's response (Compl. Ex. E) to Defendants' denial of the Request (Compl. Ex. D), Defendants "ha[ve] not offered any interest in defense of [their] policy that is able to withstand *any form of heightened scrutiny*."  *See Fraternal Order*, 170 F.3d at 366.

If the Court of Appeals's decision in *Fraternal Order*, is not directly on point here, it is on all fours with this case.  There, as here, the government had a policy requiring its employees to forego a sincerely held religious practice:  growing a beard.  *See id.* at 360.

10

There, as here, the government made exemptions to its policy for secular reasons.  *See id.* at 365.  There, as here, the government "refuse[d] to make exemptions" for an employee "whose religious beliefs prohibit them" from complying with the general policy.  *See id.* at 360.  And there, as here, the reasons offered by the government to justify its religious discrimination dissolved under scrutiny.  *See id.* at 366-67.  For instance, the Court of Appeals rejected *even physical safety*—"undoubtedly an interest of the greatest importance"—as a satisfactory rationale for the government's discrimination because the government's "policy w[as] not tailored to serve that interest."  *Id.* at 366; *see also Roman Catholic Diocese*, 141 S. Ct. at 67 (enjoining regulations that burdened religious practices *even though the regulations were designed to "[s]tem[] the spread of COVID–19"—an "unquestionably a compelling interest"*—because they were not "narrowly tailored") (emphasis added)).

So here:  As discussed above and in the Complaint, Defendants' religious discrimination against Plaintiff is totally untailored:  Whereas Defendants judged a secular rationale for working from home broadly acceptable, and have permitted employees to work from home *fulltime during the past year*, Defendants categorically rejected a religious rationale for working from home and *will not permit Plaintiff to work for home for religious reasons during even "one day, hour, or minute"—now or "in the future."*  (*See* Compl. ¶ 54; Compl. Ex. D at 2; MPI Ex. A ¶¶ 8-12).  "Defendants made no effort to determine when [accommodating Plaintiff's free exercise] would cause undue hardship and when it would not:  They simply asserted, categorically, that it always does."  (Compl. ¶ 53).  Defendants' assertion is antithetical to their legal obligation here:  *They* "*must do more* than assert that certain risk [or cost] factors are always present in [working from home as necessary to pray], or always absent from [working from home for secular reasons]."  *See Tandon*, 141 S. Ct. at 1296.

But Defendants' discriminatory policy is not only totally untailored:  Unlike *safety and human life* in *Fraternal Order* and *Roman Catholic Diocese*, the interests purportedly underlying Defendants' policy are themselves exceptionally weak, if even coherent.  (*See supra*, note 4).[5]   And Defendants offer not even a single concrete fact or specific example to support these purported interests.  For instance, as foremost reasons for categorically prohibiting Plaintiff's prayer practice, Defendants vaguely assert that "[m]any ECPO meetings are not pre-scheduled" and that its work is "collaborative" (Compl. Ex. D. at 2-3); they then utterly fail to explain why permitting Plaintiff to participate in these nondescript meetings or collaboration "telephonically (or through Teams, etc.) in order to accommodate [his] religious need would impose an undue hardship"—*or any burden at all*—on Defendants.  (Compl Ex. E at 3-4; *see also* Compl. Ex. E at 4 n.2).[6]  Defendants also vaguely assert that "emergent matters that arise may require immediate response," but utterly fail to explain why this vague assertion would suggest Plaintiff can *never* work

[5]     Multiple instances of inconsistency on the part of Defendants are discussed herein as well as in the record.  (*See, e.g.*, Compl. Ex. E at 2-10).  An example that leaps off the page is the *first sentence* of Defendants' one-paragraph rationale for their religious discrimination:  "It is the nature of the work performed by the [Essex County Prosecutor's Office] that individuals be physically present in the office."  (Compl. Ex. D at 2).  If this assertion were accurate, it would mean that all of Defendants' employees working from home either performed no work or performed no work "in the nature" of their employment.  This assertion is nonsense and even disrespectful to the many employees who have worked and continue to work hard, even overtime, from home.

[6]     As discussed in the Complaint, Defendants also observe that "in person courtroom appearances will resume at some point in the future" and that "[i]n person witness interviews are preferred over those conducted remotely."  (Compl. Ex. D at 2; *see also* Compl. Ex. E at 2-4 (explaining the irrelevance of these observations)).   These observations are uncontested, but how they tend to support a categorical denial of the Request is unclear.  (They do not.)  As Defendants are aware, appearing in person for court hearings or witness interviews *or any work obligation* is completely consistent with working from home as a general matter:  Over the past year, Plaintiff has been and would continue to be physically present for *all* in-person court appearances, witness interviews, and other obligations (*see* Compl. ¶¶ 62 & 65; MPI Ex. A ¶¶ 3 & 9); and the Request itself expressly recognizes Plaintiff's willingness to be physically present, not only under those circumstances, but *whenever* working remotely "would cause undue hardship" for Defendants (Compl. Exs. A & B).

from his nearby home as necessary to pray in a manner completely consistent with all job responsibilities and rules. (*See id.* at 4-5). Let alone that, during the past year, there has never been such an "emergent matter[]" that necessitated Plaintiff's immediate physical presence in the office. (MPI Ex. A ¶ 4). Defendants cannot speculate and "assume the worst" when an employee seeks a religious accommodation. *See Tandon*, 141 S. Ct. at 1297; *Sherbert*, 374 U.S. at 407. Yet that is exactly what Defendants have done here.

If Defendants' vague assertions regarding their interests could have potentially been found persuasive, Defendants' own admissions foreclose that possibility multiple times over. (*See* Compl. ¶¶ 43-50). ***First***, Defendants acknowledge that only in certain circumstances, *and not always*, are employees "required to be in the office during their 'at home' week *based on the needs of the office*." (Compl. Ex. D at 1 (emphasis added)). ***Second***, Defendants would generally permit Plaintiff to be physically out of the office to range "a four hundred (400) acre [public park] . . . *so long as it does not adversely impact [his] work responsibilities*," *but never* permit Plaintiff to be out of the office to work at his nearby home, **where he can actually pray *and* work in peace and solitude**, on the very same condition. (Compl. Ex. D at 3 (emphasis added)). ***And third***, Defendants recognize, as they must, that they already widely permitted the accommodation Plaintiff is seeking to others for secular reasons. (Compl. Ex. D at 1; Compl. ¶¶ 15-18; MPI Ex. A ¶¶ 3 & 10-12). Plaintiff is "at a loss to understand" how permitting *numerous other employees to work from home for secular reasons fulltime during months to a year*—or permitting Plaintiff to range 400 acres at will during work hours—does not "threaten important . . . interests," but permitting a single employee to work at home as necessary to pray does, and allegedly *always does*. *See, e.g.*, *Fraternal Order*, 170 F.3d at 366; (Compl. Ex. D at 2 (categorically prohibiting free exercise "presently or in the future")). "[T]here is no apparent reason why permitting [Plaintiff to work from home] for religious

reasons should create any greater difficulties" than permitting many others to work from home for secular reasons over long periods. *See Fraternal Order*, 170 F.3d at 366.

Defendants are required "to explain why [they] could not" accommodate Plaintiff's religious practice, *see Tandon*, 141 S. Ct. at 1297, yet under even an intermediate standard of review they fail to carry their burden on this element, *see Gonzales*, 546 U.S. at 429; *Reilly*, 858 F.3d at 180; *Fraternal Order*, 170 F.3d at 366, so Plaintiff "must be deemed likely to prevail," *see Ashcroft*, 542 U.S. at 666.

## II.     Plaintiff will continue to suffer irreparable harm—and face an immediate threat of even greater irreparable harm—absent preliminary relief.

A person is "irreparably harmed by the loss of free exercise rights 'for even minimal periods of time.'" *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020)).   Yet, here, the prohibition on Plaintiff's prayer practice imposed by Defendants is not "minimal" in duration. *See id.*  According to Defendants themselves, it is categorical and permanent. (*See* Compl. Ex. D at 2 (categorically denying Plaintiff's request to work from home as necessary to pray, **regardless of the circumstances, "presently or in the future"**)).[7]

For months, Plaintiff has been using "accrued time" (e.g., "sick" or "vacation" days) for multiple days during weeks Defendants have arbitrarily required Plaintiff to

---

[7]     That Defendants chose to prohibit Plaintiff from working at home as necessary to pray categorically, regardless of the circumstances, *and even in the future*, further evidences their unlawful intent to discriminate against religion.
         Notably, on April 26, 2021, Plaintiff requested that he be transferred to the Appellate section of the office. (Compl. Ex. E at 3).  Naturally, because the work of the Appellate section is predominantly writing and the vast majority of its court appearances are pre-scheduled in advance, working in the Appellate section is particularly amenable to the religious accommodation requested by Plaintiff.  Plaintiff suspects—but hopes it is not the case—that Defendants will conspire not to place Plaintiff in the Appellate section so as not to undermine *even further* their extraordinarily weak rationale for denying his religious accommodation request.  (Even first-year attorneys hired by the Essex County Prosecutor's Office are permitted to join the Appellate Unit, and there is no question regarding Plaintiff's qualifications.)

forgo his prayer practice.  Using accrued time this way helps prevent irreparable harm to Plaintiff on at least those days.  Plaintiff's supervisor has been personally informed of this practice; and on June 22, Plaintiff sent a letter to Defendants' counsel informing her of this practice as well.  (MPI Ex. B).

In that letter, Plaintiff respectfully requested that, at least during days or weeks Plaintiff's supervisor would not be in the office and on vacation, Plaintiff be permitted to work from home as he does normally and efficiently every other week.  (*Id.*)  (Plaintiff often works from home normally and efficiently even on days when using accrued time.) Counsel for Defendants never responded to this letter or even acknowledged its receipt. (*See supra*, note 2).

A preliminary injunction that would prevent Plaintiff from being penalized simply for his free exercise—insofar as he works from home as necessary to pray in a manner completely consistent with all job responsibilities and rules—is necessary to prevent this irreparable harm.  *See Tandon*, 141 S. Ct. at 1297 (citing *Roman Catholic Diocese*, 141 S. Ct. at 67).  This is irreparable harm that Defendants have inexplicably refused to take even minimal steps to prevent (*see, e.g.*, MPI Ex. B) *and have stated they will double in the immediate future* (MPI Ex. C).

### III.    The remaining factors clearly weigh in favor of granting injunctive relief.

As observed above, when the government is the party opposing a preliminary injunction, the balancing and public-interest factors merge.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  The balancing factor focuses on the "effect on each party of the granting or withholding of the requested relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Here, on Plaintiff's side, the effect of withholding relief would be devastating:  As he has repeatedly informed Defendants, being required to forgo his prayer practice causes him suffering on multiple levels.  (Compl. Ex. E at 6 ("I suffer and

am unable to focus on and complete work efficiently when denied the opportunity to pray"); MPI Ex. B ("Every day I am required to go to the office for no apparent reason, I suffer foregoing my prayer practice.  It is spiritually and psychologically painful."); MPI Ex. A ¶ 16).  Defendants have now stated that they will increase this irreparable harm *by 100%* (MPI Ex. C)—unless the Court grants preliminary relief.

On Defendants' side, it is not clear what harm, if any, would follow if the Court were to grant relief.  Despite Defendants' vague assertions (*see* Compl. Ex. D at 2-3; Compl. Ex. E at 2-6), they have not identified a single concrete fact or specific example— let alone actual evidence—that suggests they would suffer *even a small burden* if they permitted Plaintiff to work from home as necessary to pray in a manner consistent with all job responsibilities and rules (*see* Compl. Ex. E at 6 (Defendants "fail[ed] to show even a de minimis interest in denying the accommodation."); *supra*, note 4).

And if any "public consequences" would result from granting preliminary relief, *see Winter*, 555 U.S. at 24, they would be good consequences:  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."  *See Am. Bev. Ass'n v. City and Cty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc); *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 178 (3d Cir. 2002) ("[T]he public interest clearly favors the protection of constitutional rights.").  At the very least, "it has not been shown that granting th[is] application[] will harm the public."  *See Roman Catholic Diocese*, 141 S. Ct. at 68.  And even the public's *compelling* interest in *"[s]temming the spread" of a virus during a pandemic*, cannot justify totally untailored religious discrimination like Defendants'.  *See, e.g.*, *id.* at 67 (emphasis added).  Defendants' discriminatory "value judgment that secular (i.e., medical) motivations . . . are important enough to overcome its general interest[s] . . . but that religious motivations are not" cannot stand.  *See Fraternal Order*, 170 F.3d at 366.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion for preliminary relief and enjoin Defendants from disciplining Plaintiff simply for his free exercise of religion.  *See, e.g..*, *Fraternal Order*, 170 F.3d at 361 (affirming an order enjoining the government "from disciplining or otherwise disadvantaging" employees for their free exercise).[8]

**Date:** July 30, 2021

Respectfully submitted,

**By**: /s/Alex G. Leone
**Alex G. Leone**

---

[8]       Defendants may attempt to argue that this motion—or this case as a whole—will be mooted if or when they change their policy that currently permits others to work from home.  This argument would make no sense logically:  Defendants continue their intentional discrimination against Plaintiff's religious practice; Plaintiff continues to suffer the consequences of that religious discrimination; and treating others differently for secular reasons changes neither of those facts.  (The argument would be equally meritless as applied to Plaintiff's NJLAD claim.)

        The argument is also foreclosed legally:  "[E]ven if the government *withdraws*" a restriction on free exercise, that action itself would "not necessarily moot the case;" a plaintiff "otherwise entitled to emergency injunctive relief *remain[s] entitled*" when he "remain[s] under a constant threat" the government will use its "power to reinstate the challenged restriction[]" on free exercise.  *See Tandon*, 141 S. Ct. at 1297 (citing *Roman Catholic Diocese*, 141 S. Ct., at 68) (emphases added).  Again, here, even if Defendants change their policy that currently permits others to work from home for secular reasons, Plaintiff would remain not only under a "constant threat" of free exercise infringement: Defendants' free exercise infringement against Plaintiff *will have never abated*, let alone the policy resulting in the infringement actually "withdraw[n]."  *See id.*  And of course, Defendants' discretion to grant exemptions and permit others to work from home for secular reasons may again be exercised at any time.  *See, e.g.*, *Covid cases are rising again in all 50 states across U.S. as delta variant tightens its grip*, CNBC (July 23, 2021), https://www.cnbc.com/2021/07/23/covid-cases-are-rising-again-in-all-50-states-across-us-as-delta-variant-tightens-its-grip.html; *Tandon*, 141 S. Ct. at 1297.

        Additionally, as discussed herein, Defendants' "decision to provide medical exemptions while refusing religious exemptions" shows their "discriminatory intent" against religion.  *See Fraternal Order*, 170 F.3d at 365; *Bowen v. Roy*, 476 U.S. 693, 708 (1986) (plurality opinion); *Tenafly Eruv*, 309 F.3d at 168.  Government action motivated by discriminatory intent against religion itself is "never permissible," regardless of the government's treatment of others.  *See, e.g.*, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993).