## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEX G. LEONE, | |
|      Plaintiff, | **CIVIL ACTION NO.: 2:21-cv-12786-SDW-ESK** |
| v. | |
| ESSEX COUNTY PROSECUTOR'S OFFICE, THEODORE STEPHENS II, ROMESH SUKHDEO, GWENDOLYN WILLIAMS and ROGER IMHOF, in their individual and official capacities, | |
|      Defendants. | |

---

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR THE ENTRY OF A PRELIMINARY INJUNCTION.**

---

**GENOVA BURNS LLC**
Kathleen Barnett Einhorn, Esq.
Erica M. Clifford, Esq.
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
Fax: (973) 533-1112
Attorneys for Defendants,
Essex County Prosecutor's Office,
Theodore Stephens II, Romesh Sukhdeo,
Gwendolyn Williams, & Roger Imhof.

*Of Counsel and on the brief:*
Kathleen Barnett Einhorn, Esq.
Erica M. Clifford, Esq.
*On the Brief:*
Erica M. Clifford, Esq.
Abraham R. Jerushalmy, Esq.

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ................................................................... 1

STATEMENT OF FACTS ............................................................................ 4

LEGAL ARGUMENT .................................................................................. 9

    A.  Legal Standard for an Application for Injunctive Relief. ........................... 9

    B.  Plaintiff Cannot Show that he is Likely to Succeed On the Merits of his Free Exercise Claim. 9

    C.  Plaintiff Cannot Show that he is Likely to Succeed On the Merits of his NJLAD Claim. ...... 12

    D.  PLAINTIFF FAILS TO ESTABLISH THAT HE WILL SUFFER IRREPARABLE HARM IF THE COURT DENIES HIS MOTION FOR A PRELIMINARY INJUNCTION. ................... 14

    E.  A Balancing of the Equities Weighs Heavily in Favor of Denying Plaintiff's Motion. ........... 16

    F.  Granting an Injunction Is Not in the Public Interest. ................................ 19

CONCLUSION ............................................................................................ 21

CERTIFICATE OF SERVICE .................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*,
　42 F.3d 1421 (3d Cir. 1994) ................................................................. 19

*Blackhawk v. Pennsylvania*,
　381 F.3d 202 (3d Cir. 2004) ................................................................. 10

*Checker Cab of Philadelphia Inc. v. Uber Techs., Inc.*,
　642 F. App'x 229 (3d Cir. 2016) ............................................................. 9

*Combs v. Homer–Center Sch. Dist.*,
　540 F.3d 231 (3d Cir. 2008) ................................................................. 10

*Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*,
　290 F.3d 578, 596 (3d Cir. 2002) ....................................................... 9, 16

*ECRI v. McGraw-Hill, Inc.*,
　809 F.2d 223 (3d Cir. 1987) ............................................................. 14, 15

*Employment Div., Dept of Human Res. of Or.*,
　494 U.S. at 879 ................................................................................. 10

*Exec. Home Care Franchising LLC v. Marshall Health Corp.*,
　642 F. App'x 181 (3d Cir. 2016) ..................................................... 9, 14, 16

*Julius Realty Corp. v. Thompson*,
　2020 WL 2539188, at *1 (D.N.J. May 19, 2020) ........................................ 9

*McTernan v. City of York*,
　564 F.3d 636 (3d Cir. 2009) ................................................................. 10

*Miller v. Mitchell*,
　598 F.3d 139 (3d Cir. 2010) ................................................................. 9

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*,
　290 F.3d 578 (3d Cir. 2002) ............................................................. 9, 16

*NutraSweet Co. v. Vit–Mar Enters., Inc.*,
　176 F.3d 151 (3d Cir. 1999) ................................................................. 9

*Tenafly Eruv Ass'n v. Tenafly*,
　309 F.3d 144 n. 24 (3d Cir. 2002) ........................................................ 10

*Tucker Anthony Realty Corp. v. Schlesinger*,
　888 F.2d 969 (2d Cir. 1989) ................................................................. 14

*Vista India v. Raaga, LLC,* 501 F. Supp.
 2d 605 (D.N.J. 2007) ……………………………………………………………………………16

**Statutes**

N.J.S.A. 10:5-1 to -49 ……………………………………………………………………………… 1

N.J.S.A. 10:5-12(q)(1)……………………………………………………………………… 12, 18

## PRELIMINARY STATEMENT

In his motion for a preliminary injunction, Plaintiff, Alex G. Leone ("Plaintiff"), argues that the decision of his employer, the Essex County Prosecutor's Office ("ECPO"), to have all employees return to the office and court environment on either a hybrid or full-time basis, constitutes a discriminatory policy in violation of his right to the free exercise of his religion under the Federal Constitution and in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49 ("NJLAD"). That conclusion, however, defies both logic and law and, perhaps more importantly at this procedural juncture, is a far cry from circumstances that warrant the extraordinary measure of injunctive relief.

The quandary faced by employers, indeed all individuals, in the face of this pandemic is well-known and, thus, does not require extensive background for the Court. As the pandemic emerged in full force in New Jersey in March 2020, many basic human activities came to a standstill – businesses were shuttered, families were sheltered in place, and the courts operated entirely remotely. Following CDC guidance and the Governor's Executive Orders, the ECPO advised its employees in March 2020 that they would be working on a hybrid "A/B Schedule." Under this policy, half of the ECPO staff were present in the office for one week, and then working remotely the following week. The primary purpose for this hybrid transition was to avoid having 100% of the staff in the office at the same time, to minimize the potential spread of the COVID-19 virus. This policy was implemented after much consideration as to the safety of its employees, and in response to the realities of struggling with the novel COVID-19 virus.

In November 2020, the A/B Schedule was suspended due to a spike COVID-19 infections and the unavailability of vaccination for employees. As a result, at that point in time, most, if not all, communications were conducted telephonically and by video conferences as a matter of necessity, and

not by arbitrary choice. For the next five months, out of an abundance of caution, all employees worked from home full-time, and would come into the office only occasionally, for the most important in-person tasks.

In recognition of the need to return to court and to the office, and with the newly available COVID-19 vaccinations, the ECPO again implemented the A/B Schedule in April 2021, for units where it was deemed necessary, based on workload. Supervisors and heads of departments were overwhelmed with work, as due to the lack of physical availability of assistant prosecutors, they had extra work to do to move emergent matters along, which meant taking on an extra burden to handle matters themselves and calling assistant prosecutors after to bring them up to speed on their work.

It cannot be overemphasized that the ECPO, as the local county agency charged with enforcement of the laws of this State, is tasked with emergent and critical responsibilities and duties to the public, and the rights of victims as well as those accused before conviction, cannot be held in abeyance. While these proceedings were conducted remotely when absolutely necessary to the health and welfare of the general public of this State, as soon as was deemed safe, the courts advised that it would reopen criminal proceedings and jury trials to be conducted in person.

In acknowledgement of the May 11, 2021 Order from the New Jersey Supreme Court notifying the Bar that in-person jury trials would resume on June 15, 2021, the ECPO began to develop plans to return its employees to the office and to the courts full-time. *See* Certification of Kathleen Barnett Einhorn, dated August 24, 2021 ("Einhorn Cert."), Exhibit ("Ex.") A. Accordingly, the ECPO decided that as of August 2, 2021, all employees were required to be in the office full-time - there were no units excepted from this requirement. *See* Einhorn Cert. at Ex. B ("Imhof Cert.") at ¶ 12.

Plaintiff submitted a request for an accommodation in which he stated that he has "a spiritual need to pray in peace and solitude, such as in [his] backyard, several times throughout the day."

2

Einhorn Cert. at Ex. C. Plaintiff requested permission to "work and pray throughout the day at home, to be physically present at office or court when reasonably necessary or when accommodating this religious need would cause undue hardship." *Id*.

The ECPO made genuine attempts to accommodate Plaintiff, which took into consideration Plaintiff's request for privacy during prayer (Plaintiff's own private office, or a soundproof interview room), as well as his stated interest in being able to access the outdoors when praying (directly across the street from Plaintiff's office building is the Eagle Rock Reservation, a 400-acre park accessible to the public). *See* Ex. D. These accommodations were summarily rejected by Plaintiff, who insisted that the only accommodation he would accept was the unilateral and subjective authority to determine when he would appear for work, if in his estimation it was necessary to do so. If he did not deem it necessary to appear in person for work, he would not. Plaintiff does not specify dates or times during the day when he needs to pray so the target is always moving. Critically, Plaintiff never submitted such a request for an accommodation of his religious briefs prior to the pandemic, when he worked full time in the office without issue from September 2019 through March 2020.[1] Now, Plaintiff claims that he suffers extreme and irreparable harm should he be forced to come into the office, *albeit* only when he deems it unnecessary. If it is necessary, he is willing and able to come into the office and appear in court, for days and weeks on end with no issue. The harm allegedly suffered by Plaintiff therefore is difficult, if not impossible, to quantify and thus even more challenging to remedy.

Defendants do not contest that Plaintiff's religious beliefs are sincerely held, they respect and take his statements at face value. Defendants instead oppose this motion because the facts of this case do not warrant the emergent relief that Plaintiff is requesting.

---

[1] The request referenced on page 2 of Ex. D was related to a dispute when Plaintiff closed his eyes for spiritual reflection in a courtroom and was asked by the presiding judge to keep his eyes open. This prior request is not referenced in Plaintiff's Complaint and has nothing to do with the instant matter, or Plaintiff's current employment status.

Plaintiff cannot demonstrate the likelihood of success on the merits of his claims that Defendants violated his first amendment right to the free exercise of his religion, nor that Defendants failed to accommodate his religious accommodation request under the NJLAD. It is undisputed that Defendants put forth a *bona fide* effort to communicate with Plaintiff about his request and carefully considered and then offered several viable alternatives.

Further, the policy of the ECPO requiring its employees to return to work is generally applied and facially neutral. In addition to Plaintiff's failures with respect to the second element, Plaintiff cannot establish that he has suffered and will continue to suffer irreparable harm if the Court does not grant his motion. Plaintiff's assertions that he suffers psychological and physical harm when he cannot be home praying are belied by his assertions that he is fine to come to work for any court proceeding, live witness or victim interviews, or for any other reason, so long as he deems his presence necessary.

Plaintiff's requested emergent relief – that the Court enjoin Defendants from taking any disciplinary action against Plaintiff "simply for praying in accordance with his religion, including at home on work days" is likewise exceptionally vague, and purports to grant Plaintiff unilateral authority to simply come and go as he pleases, with no recourse available to his employer.  This relief is not tied to a specific religious practice, or to any specific day or time. It is exactly this kind of specious allegations that courts have determined insufficient to support an order for an injunction.

## STATEMENT OF FACTS

The mission of the Essex County Prosecutor's Office is "to seek justice, to serve justice, and to do justice."[2] Plaintiff is an assistant prosecutor in the Financial Crime and Intellectual Property unit at the ECPO. Einhorn Cert. at Ex. D (Compl.) at ¶16.  Plaintiff was hired by Defendants on

---

[2] *Mission Statement,* ESSEX CNTY. PROSECUTOR'S OFF., available at https://www.njecpo.org/?page_id=59, (last visited: Aug. 18, 2021).

September 9, 2019. Imhof Cert. at ¶2. Prior to March 2020, Plaintiff worked in the office every-day along with the rest of the ECPO workforce. *See id.* at ¶3. In March 2020, the ECPO officially instituted its "A/B Schedule," in which employees, including Plaintiff, would work in the office and from home on alternating weeks. *Id.* at ¶3. In November 2020, the ECPO switched to a fully remote schedule, with the exception of specific instances where assistant prosecutors were needed with the greatest urgency. *Id.* at ¶4. In April 2021, assistant prosecutors in various units were informed that they must return on an A/B Schedule, to keep up with the needs of their supervisors. *Id.* at ¶5. During the fully remote schedule beginning in November, department heads had been taking on many of the responsibilities of assistant prosecutors in dealing with emergent matters and bringing them up to speed on the phone, which was not thought to be sustainable. *See* Imhof Cert. at ¶5.

On April 26, 2021, Plaintiff submitted his request for a permanent religious accommodation. *See* Ex. C. In it, Plaintiff stated that he has a "spiritual need to pray in peace and solitude, such as in [his] backyard, several times throughout the day." *Id.* As a result of this "need," Plaintiff requested to work from home (permanently) and will only be physically present at the office or court "when reasonably necessary" or "when accommodating this religious need would cause undue hardship." *Id.* This accommodation request was submitted to Deputy Chief Prosecutor Walter Dirkin ("Dirkin"). *See* Imhof Cert. at ¶6.

On May 6, 2021, Chief Assistant Prosecutor Roger Imhof ("Imhof"), Executive Assistant Prosecutor Gwendolyn Williams, Dirkin and Essex County Counsel Courtney Gaccione met with Plaintiff over videoconference to gather more specific information regarding his request. *See* Ex. D; *see also* Imhof Cert. at ¶7. Imhof stated the following regarding that conference:

> During this conference, I explained to Plaintiff that as a new attorney with the Prosecutor's Office, his presence in the office was necessary to his growth and development as a trial lawyer – to observe colleagues at other trials, and to collaborate and strategize with colleagues in the

office regarding investigations, witness and victim interviews, case presentations to grand juries, among other responsibilities of an Assistant Prosecutor.

Imhof Cert. at ¶8.

On May 12, 2021, Imhof sent a memorandum in response to Plaintiff's request. *See* Ex. D. In this memorandum, Imhof first outlined Plaintiff's requests and the clarifying conversations surrounding the requests. *Id*. Plaintiff's request was permanent in nature and was to begin immediately, seeking to never have to work full-time in the office again. *Id*.

To add context to his original request, Imhof explained the ECPO's understanding that the basis for Plaintiff's request was a spiritual "need" to pray in peace in his backyard several times per day, "spontaneously." Ex. D. Plaintiff insisted that being physically present in the office made him feel uncomfortable and unable to focus on his spontaneous spoken prayer. *Id*. He claimed that it was "contrary to the peace and solitude" that he desired. *Id*. He also stated that he does not want to be overheard by others. *Id*. Plaintiff further stated that his "need" to pray spontaneously throughout the day was based in Christianity, but he did not provide ECPO with a specific provision in Christianity that this "need" was derived from. *Id*.

Defendants offered accommodations based on Plaintiff's criteria. Imhof Cert. at ¶9. When asked if prayer at the park across the street from the office was an acceptable alternative, Plaintiff told the ECPO that it was not, as it would "curtail the spontaneous nature of [his] prayer and subject [him] to being heard or seen by others." Ex. D. Plaintiff stated that praying in the office with his door closed for privacy would occasionally be a viable option, but doing so every day would not be conducive to the peace and solitude that he needs and would subject him to the possibility for interruption or being overheard. *Id*. In sum, Plaintiff is unwilling to accept any deviation from the accommodations he requested – to be able to work from his backyard, full-time, despite the rest of

the staff returning to the office full-time. *See* Imhof Cert. at ¶11.

In the second portion of this memorandum, Imhof denied Plaintiff's request to permanently work from home on a full-time basis. Ex. D. Imhof stated that in the coming months, ECPO would discontinue the A/B Schedule and return to regular, pre-pandemic in-office work requirements. *Id*.[3] Additionally, it is anticipated that a return to in-person court appearances is not far off, Imhof explained. *Id*.  Further, Imhof noted that meetings are not always prescheduled, and require the presence of attorneys, as do in-person witness interviews. *Id*. Additionally, Imhof explained that emergent matters come about that require immediate responses, necessitating the presence of attorneys as well. *Id*. The collaborative nature of the work would result in a loss of effectiveness if not done in-person. *See* Ex. D. Though partially remote work was the only reasonable option during the pandemic, Imhof anticipates a surge of new matters as the State attempts a return to normalcy, which changes the outlook for assistant prosecutors and would make remote work insufficient. *Id*. As a result, Imhof stated that allowing Plaintiff to permanently work from home would constitute and unreasonable interference with the efficient operation of the workplace, pursuant to N.J.S.A. 10:5-12 (q)(1). *Id*.

Despite the denial of Plaintiff's accommodation request, Imhof reiterated three potential accommodations to Plaintiff: (1) to pray in his office whenever needed throughout the workday; (2) to utilize the Essex County Eagle Rock Reservation (located directly across the street from the ECPO's office), whenever he needed to spontaneously pray, so long as it does not adversely affect his work responsibilities, *Id*.; and (3) to provide exclusive permission to use a soundproof interview room on the third floor of the same building to which he is currently assigned. *See* Ex. D.

---

[3] Note, as noted above, that the ECPO did in fact institute full time in-office work requirements on August 2, 2021. At the time of Imhof's memorandum, the A/B Schedule was in effect, with assistant prosecutors coming in, even during "at home weeks," based on the needs of the office.

On June 1, 2021, Plaintiff submitted a memorandum in response to Imhof's, renewing his request to permanently work from home; voicing his displeasure with Imhof's attempted compromise; and issuing a new request to be transferred to the ECPO's Appellate Division Unit. *See* Einhorn Cert. at Ex. E. Plaintiff requested to be transferred to the Appellate Division in an effort to not be bound by the impending schedule changes which would not permit him to work from home. *See* Plaintiff's Brief in Support of his Motion for a Preliminary Injunction, dated July 30, 2021 ("Pl. Br."), p. 14, Footnote 7. On June 9, 2021, Imhof sent a response to Plaintiff noting that there are no openings in the Appellate Division, and that the ECPO's position on his request for religious accommodations remains unchanged. Ex. F. Plaintiff claims that the Appellate Division employees at Plaintiff's office have been permitted to work from home since the beginning of the pandemic in March 2020 through the present day. *See* Pl. Br., p. 3. However, as of August 2, 2021, all employees of every unit, including the Appellate and Adult Trial Sections, were required to be back in the office full time. *See* Imhof Cert. at ¶12. This updated protocol was announced in an email from Walter Dirkin to the Essex County Prosecutor's Office staff, on July 26, 2021. Ex. G.

After refusing to arrive at a compromise, and displeased with the ECPO's denial of vesting Plaintiff with unfettered authority to determine the nature of his employment, Plaintiff filed a Complaint in the New Jersey District Court on June 18, 2021. *See* Ex. H. Defendants filed a Notice of Appearance on July 19, 2021. Plaintiff then filed this motion for a Preliminary Injunction on July 30, 2021. For the reasons set forth below, Defendants assert that the facts do not warrant the extreme remedy of even temporary injunctive relief, thus, Plaintiff's motion should be denied.

## LEGAL ARGUMENT

### A.   LEGAL STANDARD FOR AN APPLICATION FOR INJUNCTIVE RELIEF.

"[I]njunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Checker Cab of Philadelphia Inc. v. Uber Techs., Inc.*, 642 F. App'x 229, 231 (3d Cir. 2016) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).

To obtain a preliminary injunction, the movant must establish: "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Exec. Home Care Franchising LLC v. Marshall Health Corp.*, 642 F. App'x 181, 183 (3d Cir. 2016) (quoting *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010)). "The first two factors are the 'most critical,' and the Court considers these 'gateway factors' before the third and fourth factors. [] Only if a plaintiff meets the threshold for these gateway factors does the Court consider the remaining factors." *Julius Realty Corp. v. Thompson*, 2020 WL 2539188, at *1 (D.N.J. May 19, 2020) (internal citations omitted).

Of course, as is the case here, "[a] plaintiff's failure to establish *any* element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). Plaintiff fails to carry this burden on all four elements, therefore, he falls woefully short of the scrutiny that accompanies a request for injunctive relief.

### B.   PLAINTIFF CANNOT SHOW THAT HE IS LIKELY TO SUCCEED ON THE MERITS OF HIS FREE EXERCISE CLAIM.

Plaintiff's first count claims that Defendants violated his right to freely exercise his religion under Section 1983 and the First Amendment of the United States Constitution because he is not allowed to work from home. *See* Ex. D. The Free Exercise Clause prohibits regulation of religious beliefs and also protects religiously motivated expression. *See McTernan v. City of York*, 564 F.3d 636, 647 (3d Cir. 2009)(citing *Employment Div., Dept of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990)). That said, no right, including the right vested under the Free Exercise Clause, is absolute. *See id.* When the challenged government action, or in this case "state" action, is "neutral and generally applicable" the government need not justify the policy with a compelling governmental interest as would be required under the strict scrutiny standard. *Employment Div., Dept of Human Res. of Or.*, 494 U.S. at 879.

 "A [state action] is 'neutral' if it does not target religiously motivated conduct...." *Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004). It is "generally applicable" if it extends to all conduct and does not selectively burden religiously motivated conduct. *See Combs v. Homer–Center Sch. Dist.*, 540 F.3d 231, 242 (3d Cir. 2008) (citing *Blackhawk,* 381 F.3d at 209)). Should the action be deemed neutral and generally applicable, rational basis scrutiny applies which "requires merely that the action be rationally related to a legitimate government objective." *Tenafly Eruv Ass'n v. Tenafly,* 309 F.3d 144, 165 n. 24 (3d Cir. 2002).

Plaintiff concedes that this analysis applies to neutrally facial policies in his moving brief, but argues that because the ECPO has made secular exemptions for other categories of employees, ECPO's return to work policy should be subject to the heightened standard of strict scrutiny. *See* Pl. Br. pp. 7-9. Plaintiff is incorrect.

The ECPO permitted all of its employees to work from home for a temporary period of time during a global health emergency. Acting in conjunction with the Executive Orders of the Governor

of New Jersey and the Country at large, especially as New Jersey was substantially impacted by the virus, the ECPO initially allowed its employees to work partially remotely. That ECPO had this remote work policy at the height of the pandemic cannot now be argued to constitute a categorical secular exemption.

It is undisputed that all ECPO employees, of every unit, were required to return to work on August 2, 2021, following the availability of vaccines and the re-opening of the courts to in person proceedings. *See* Ex. G. There is no categorical secular exemption for any group of people, and Plaintiff has not been subject to "putative action" by being required to return to the office. The ECPO has a legitimate objective in having its assistant prosecutors, like Plaintiff, in the office, actively collaborating with senior staff members on case presentations to grand juries, analyzing whether to prosecute a particular suspect, to accept a plea bargain in a given case or risk taking it to trial, or to argue a certain point of law. The job is fast paced and high energy, and an Assistant Prosecutor needs to be able to think on one's feet. As Defendant Imhof explained to Plaintiff during the May 6, 2021 discussion regarding his request for accommodation, it is vital to the development of the new and inexperienced attorneys to observe senior colleagues at other trials, and to collaborate and strategize with colleagues in the office regarding investigations, witness and victim interviews, case presentations to grand juries, and other critical law enforcement tasks as they arise. *See* Imhof Cert. at ¶8.

Requiring Plaintiff to come into the office, given the nature of his job, coupled with the accommodations already offered by the ECPO, satisfies this standard that the policy is rationally related to a legitimate government objective. The ECPO's return to work policy therefore withstands the low bar of rational basis scrutiny.  Accordingly, Plaintiff cannot not prevail on his constitutional claim against Defendants.

### C.   PLAINTIFF CANNOT SHOW THAT HE IS LIKELY TO SUCCEED ON THE MERITS OF HIS NJLAD CLAIM.

In Count Two of his Complaint, Plaintiff claims that Defendants failed to provide him with a religious accommodation in violation of the NJLAD. *See* Compl. at ¶¶18, 19. The NJLAD prohibits employers from imposing a condition that "would require a person to violate or forego a sincerely held religious practice or observance" unless, "after engaging in bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's religious observance or practice without undue hardship on the conduct of the employer's business." N.J.S.A. 10:5-12(q)(1).

Here, Plaintiff, along with <u>all</u> other ECPO employees, is simply being asked to appear for work as an Assistant Prosecutor in one of the busiest counties in the State. When Plaintiff advised his supervisor of his need to practice prayer during the day, the ECPO quickly held a meeting to present Plaintiff with reasonable alternatives. *See* Ex. D. In other words, the ECPO's immediate response was not rejection, as Plaintiff suggests, but a good faith showing of an intent to arrive at a meaningful compromise.  Plaintiff, however, was clearly uninterested in a compromise of any nature.

The ECPO plainly engaged in *bona fide* efforts to formulate alternative accommodations, which took into consideration the stated reasons behind Plaintiff's request:

> 1) You may continue to engage in pray in your private office during the work day;
>
> 2) You may access the Essex County Eagle Rock Reservation that is directly across the street from your worksite. The Eagle Rock Reservation is a four hundred (400) acre property with multiple secluded areas. This option is offered as you specifically referenced your preference to pray outside. . . .
>
> 3) The ECPO has identified a soundproof interview room located on the third floor of the building where you are currently assigned. The interview room does not have occupants on either side and would be completely private. The soundproofing will address your concern

> about others being able to hear you during prayer. ECPO is prepared
> to offer you this room on either a permanent basis (if you wish to
> relocate your office) or you may remain in your current office and use
> this office on an as needed basis. . . .

*See id*. These accommodations were summarily rejected by Plaintiff, who insisted that the only accommodation he would accept was the unilateral and subjective authority to determine when he would appear for work. If he did not deem it necessary to appear in person for work, he would not. *See id*.

Plaintiff does not claim that anyone at the ECPO forbid him from praying while at work, by contrast the ECPO permit him to leave the office at any time to access the outdoor park across the street and pray in complete solitude. Or he can use his private office. Or he can use a soundproof interview room where he would not have any concern about being overheard. He has not been told that he can only pray at "X" time, or only in "X" place, nor has he been told that he cannot pray in the office in any manner at all. The only demand that the ECPO rejected was Plaintiff's request to work entirely from home unless and until Plaintiff deems it necessary to come to the office.

At this point, what Plaintiff is arguing is not whether any of the ECPO's accommodations were reasonable, as that would imply that Plaintiff was genuinely engaging in the process to arrive at a fair accommodation.  Rather, Plaintiff contends that unless the Court holds that Plaintiff can work exclusively from home, Plaintiff's rights under State and Federal law, will be unduly burdened.

Defendants submit that the Court need not address Plaintiff's alleged undue hardship in its analysis of this application because the ECPO has not refused to, or been unable to, offer reasonable accommodations to Plaintiff. They have. What would be an undue hardship for the ECPO is to have Plaintiff work remotely every day, unless or until Plaintiff finds it "reasonably necessary" to come in. It was explained to Plaintiff that it would be a hardship for the ECPO if one of their Assistant Prosecutors was not present for *ad hoc* meetings, or emergent matters as they often arise in Plaintiff's

line of work, or to collaborate with and observe senior colleagues. *See* Imhof Cert at ¶8; *see also* Ex. D.

Plaintiff was able to adhere to this requirement to physically appear in the office, upon his hire and for approximately six months thereafter, before the pandemic forced extreme change at the office. These are once again the present-day requirements, which Plaintiff initially adhered to without issue.

Plaintiff will not be able to prevail on the merits of his NJLAD claim because Defendants put forth a *bona fide* effort to offer Plaintiff reasonable accommodations in light of his request. He cannot prove otherwise. Thus, Plaintiff's instant motion should be denied.

### D.   PLAINTIFF FAILS TO ESTABLISH THAT HE WILL SUFFER IRREPARABLE HARM IF THE COURT DENIES HIS MOTION FOR A PRELIMINARY INJUNCTION.

In addition to establishing a likelihood of success on the merits, Plaintiff must also establish that he will suffer irreparable harm without a preliminary injunction. *Exec. Home Care Franchising LLC,* 642 F. App'x at 183. This element cannot be met here. In order to demonstrate irreparable harm, a plaintiff has the burden of establishing a "clear showing of immediate irreparable injury." *ECRI v. McGraw-Hill, Inc.,* 809 F.2d 223, 226 (3d Cir. 1987).

In *In re Revel AC, Inc.,* 802 F.3d 558 (3d Cir. 2015), the Court held that to establish irreparable harm, a plaintiff "must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Id.* at 571 (quoting *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989)).

Plaintiff claims in his brief that "foregoing [his] prayer practice causes adverse spiritual, psychological, and even physical effects on me." *See* Pl. Br. p. 16.  However, Plaintiff does not explain what these effects are, nor is it even remotely a foregone conclusion that Plaintiff must forego

prayer when he is in the office.

By Plaintiff's own admission, Plaintiff is "fully willing to be physically present for anything required by [his] job responsibilities – including, for instance, in-person court appearances, witness interviews, or any other obligation." Certification of Alex G. Leone, dated July 30, 2021 ("Leone Cert"), at ¶ 9. Plaintiff is therefore willing and able to be present in the office and in court when he deems it necessary, and does not argue that he should be relieved of these duties, or is harmed when he is physically present on these days.

There is no specific harm identified in his supporting brief or certification on days he does not feel it necessary to be in the office, only that "forgoing prayer practice causes adverse spiritual, psychological and even physical effects on [him]." Leone Cert. at ¶16. These vague assertions fall far short of the "immediate, irreparable injury" standard which must be demonstrated by a "clear showing" of actual injury or harm. *ECRI,* 809 F.2d at 226.

Plaintiff also has demonstrated that mere presence in the office does not cause him irreparable harm of any cognizable sort, as he was able to work full time in the office from hire date in September 2019 until March 2020.

Plaintiff mentions as part of his argument on this point that he has been using his accrued time off during times which he has been required to go into the office. *See* Pl. Br., pp. 14-15. Plaintiff is permitted to use his accrued time off however he would like to. That said, Plaintiff's decision to call out every other day to avoid coming into the office does not demonstrate a cognizable, irreparable harm that ECPO's policy is inflicting. This conduct actually underscores the fact that Plaintiff does not suffer actual irreparable harm when he is in the office, because there is no distinctive difference between coming in on a Monday versus a Wednesday, and Plaintiff does not attempt to make such a distinction in his brief or declaration. Plaintiff has failed to demonstrate that he will suffer irreparable

harm if the preliminary injunction is not granted at this stage, and as such, the preliminary injunction should be denied.

### E.   A BALANCING OF THE EQUITIES WEIGHS HEAVILY IN FAVOR OF DENYING PLAINTIFF'S MOTION.

Though it is already clear that Plaintiff fails on the first two prongs of the test outlined in *Exec. Home Care Franchising LLC,* Plaintiff also falls short upon review of a balancing of the equities. *Id.* at 183. Even setting aside the myriad of fatal deficiencies in Plaintiff's position on the first two factors, Plaintiff equally fails on this point as well. "Before granting an injunction, a district court must balance the relative harm to the parties, i.e., the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued." *Vista India v. Raaga, LLC,* 501 F. Supp. 2d 605, 624 (D.N.J. 2007) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.,* 290 F.3d 578, 596 (3d Cir. 2002)).

Plaintiff's argument is that if this motion is denied, Plaintiff will "be required to forgo his prayer practice," which he insists causes him to suffer on "multiple levels." Pl. Br., pp. 15-16. However, if that injury were to occur, which Defendants adamantly contend it would not, it would be of Plaintiff's own doing. Plaintiff was offered three viable accommodations by Defendants in order to permit him to continue to pray privately even after the remote work protocols ended. *See* Ex. D. If he were required to return to the office, he could avail himself of any of the various more than reasonable accommodations to ensure he could work from the office, and continue to engage in daily prayer.

As outlined in Imhof's memorandum, the ECPO offered to let Plaintiff pray in his office whenever needed throughout the workday. *See* Ex. D. Alternatively, the ECPO has permitted Plaintiff to go directly across the street to the Essex County Eagle Rock Reservation so long as it does not adversely affect his work responsibilities. *Id.* It is a 400-acre property with multiple secluded

areas. *Id*. Plaintiff specifically asked to pray outside, and this would afford him the opportunity to do so at his desired times. *Id*.

The final accommodation offer was for Plaintiff to have exclusive permission to use a soundproof interview room on the third floor of the same building in which he is assigned. Ex. D. Plaintiff would be allowed to use the room on a permanent basis if he relocated his office, or he could go to the room when needed from his current office. *Id*. Plaintiff would have exclusive use of the office and the ability to lock the door to avoid any distractions or interruptions. *Id*. This offer would allow him to pray in quiet, without any chance of him being overheard or disrupted. *Id*. If he chooses to utilize the soundproof interview room and move his office to the area, he can seamlessly enter the room spontaneously, when he feels the sudden urge to pray that he describes. *Id*.

These accommodations are generous, and directly touch upon the unique, specific criteria which Plaintiff "needs" to pray. Plaintiff would not only have the chance to pray in a private, quiet environment – and outside if he so chooses – but he would also simply be in the same day-to-day situation as he was during the first six months of his employment prior to the pandemic. He would also be in the same situation as those assistant prosecutors in the Adult Trial and in the Appellate Division. *See* Imhof Cert. at ¶12.

On the other hand, an erroneously issued preliminary injunction would cause undue harm to the ECPO, as they have acted in good faith at all times and tried to accommodate Plaintiff as effectively as possible within reason. As Imhof outlined in his response to Plaintiff's request, there is actual harm that would occur to Defendants if this motion were to be granted;

> It is the nature of the work performed by the ECPO that [requires] individuals [to] be physically present in the office.  As discussed during our meeting, in person courtroom appearances will resume at some point in the future. Many ECPO meetings are not pre-scheduled and occur on an *ad hoc* basis that requires the presence of attorneys in the office.  In-

17

person interviews are preferred over those conducted remotely. Additionally, emergent matters that arise may require immediate response that would necessitate your presence in the office. You acknowledged the collaborative nature of ECPO's work which often requires in person discussion. Finally, as discussed during our meeting, the workload of the ECPO was significantly decreased during the pandemic. It is anticipated that workload will begin to increase now that the pandemic has begun to subside. For these reasons, ECPO takes the position that to allow your religious accommodation request to work from home on a full-time basis would cause an undue hardship to the office.

Ex. D. Imhof cited N.J.S.A. 10:5-12(q)(1), explaining that this requested accommodation would bring about undue hardship to the ECPO, by way of "unreasonable interference with the safe or efficient operation of the workplace." *Id*. Although remote work was allowed during the heart of the COVID-19 pandemic, it is quite obvious that a workplace does not function at full effectiveness during the emergency protocols that companies temporarily put into place. These measures were never, at any point, intended to be permanent, and these neutral measures applied to all employees equally. At this point in time, all employees at Plaintiff's level are no longer permitted to work from home. *See* Imhof Cert. at ¶12.

However, Mr. Leone is the one seeking preferential treatment. He is the one who wants the rules to apply in a special way to him, despite accusing the ECPO of treating him in a lesser, discriminatory fashion. Plaintiff was hired as part of a system, in which employees are expected to be present at their place of work, in order to do their job utilizing the resources and relationships they have at the office. He is part of a collaborative team, and he must be present immediately (within reason) for any sort of unexpected reason in which his availability is necessary. The lack of availability and irreplaceable physical presence would create an undue hardship, as Plaintiff was hired and is being paid to do just that, absent temporary extreme measures due to an extreme global health crisis.

Plaintiff was expected to comply with the above availability needs prior to the pandemic. Defendants are sensitive to the fact that everyone is different, and some people have unique needs that are *within reason* to accommodate. Defendants offered more than reasonable accommodations for these needs. *See* Ex. D. However, his demands transform the essence and nature of the job altogether, leading to an extreme effectiveness decline, and causing undue hardship to Defendants, and thus are not within reason.

If this preliminary injunction were not granted, Plaintiff would simply be returning to the same day-to-day job situation for which he was hired and successfully worked through for six months prior to the pandemic. If the preliminary injunction were to be granted, Defendants would be forced to employ an employee who cannot provide the availability and general effectiveness, which is irreplaceable, that the job requires, despite offering him extremely reasonable accommodations based on his demands. This would in turn cause an undue hardship to Defendants. It is quite clear that in balancing the equities, Defendants would be far more harmed by the granting of the preliminary injunction than Plaintiff would be by its denial. Hence, Plaintiff has failed to satisfy his burden to prove this third element.

## F.   GRANTING AN INJUNCTION IS NOT IN THE PUBLIC INTEREST.

Plaintiff has failed to establish that not granting this preliminary injunction would be against public interest, and on the contrary, Defendants argue that *granting* the injunction is *against* public interest. "In considering where the public interest lies, it is essential to evaluate the possible effects upon the public from the grant or denial of injunctive relief." *Oburn v. Shapp*, 521 F.2d 142, 152 (3d Cir. 1975), *holding modified by Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994). "As the Supreme Court has observed, 'parts of equity may, and

frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 803 (3d Cir. 1989)(quoting *Virginian Ry. Co. v. System Fed'n No. 40,* 300 U.S. 515, 552 (1937)).

A prosecutor serves the public and the public's interest. *See American Bar Association Standard 3-1.2: Functions and Duties of the Prosecutor*; *see also American Bar Association Standard 3-1.3: The Client of the Prosecutor*. Therefore, if a prosecutor is not able to adequately develop professionally and satisfy his job obligations, it is harmful to public interest. Here, Defendants argue that by not being available in the office, as he was for months prior to the pandemic, Plaintiff would be unable to properly develop professionally, which would harm the public as a whole, whom he represents.

In May 2021, Imhof warned Plaintiff that the ECPO would be disadvantaged by his lack of physical availability. *See* Imhof Cert. at ¶¶7-8. As a new attorney, Imhof advised Plaintiff that his presence, outside of his direct personal work responsibilities, was integral to his "growth and development." *Id*. This includes the opportunity to "observe colleagues at other trials, and to collaborate and strategize with colleagues in the office regarding investigations, witness and victim interviews, case presentations to grand juries, among other responsibilities." *Id*. Additionally, in his memorandum to Plaintiff, Imhof explained that the case load for an assistant prosecutor will only grow more burdensome with the return to the office. *See* Ex. D. As a result, it would not only be difficult for Plaintiff to develop properly as an attorney, but there is also a high likelihood that permanently working from home would cause difficulties in handling the burdensome case load, decreasing his effectiveness as a servant of public interest. Therefore, Plaintiff not being available in-person is harmful to public interest, and as a result, the preliminary injunction should be denied

on those grounds, as well as the others above.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction should be denied.

Respectfully submitted,

**GENOVA BURNS LLC**

Dated: August 24, 2021

/s/*Kathleen Barnett Einhorn*

Kathleen Barnett Einhorn, Esq.
Erica M. Clifford, Esq.
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
Fax: (973) 533-1112
Attorneys for Defendants,
Essex County Prosecutor's Office,
Theodore Stephens II, Romesh Sukhdeo,
Gwendolyn Williams, & Roger Imhof

## CERTIFICATE OF SERVICE

I, Kathleen Barnett Einhorn, the undersigned, certify under penalty of perjury, that on August 24, 2021, I caused a true and correct copy of the attached Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction, Certification of Counsel, and the exhibits attached thereto, to be served via the Court's CM/ECF System.

Dated:  August 24, 2021

/s/ *Kathleen Barnett Einhorn*
Kathleen Barnett Einhorn

16103074v2 (1582.132)